**Ronald SCALES, Plaintiff,**

v.

**DISTRICT OF COLUMBIA, et al., Defendants.**

**Civ. A. No. 94–2301.**

United States District Court, District of Columbia.

July 25, 1995.

Ronald Scales, Lorton, VA, pro se.

Richard Stuart Love, Office of Corp. Counsel, D.C., Washington, DC, for defendants.

## MEMORANDUM OPINION

SPORKIN, District Judge.

This matter comes before the Court on Defendants' motion to dismiss.

Plaintiff Ronald Scales filed this action alleging he was improperly placed and held in administrative segregation at a maximum security facility for four months. Plaintiff alleges violations of his due process and equal protection rights and his right not to be subject to cruel and unusual punishment.

### I. Background

On December 22, 1993, Plaintiff was transferred from a half-way house to the District of Columbia's Community Correctional Center #1 after allegedly assaulting another resident of the half-way house. Plaintiff was transferred again on January 7, 1994, this time to the maximum security facility in Lorton, Virginia, where he was placed in administrative segregation. Prisoners in administrative segregation face more restrictive conditions than those in the general population. For example, they may be limited to as few as two hours per week for out-of-cell recreation.[1]

Plaintiff alleges that the prison's classification board met on January 11, 1994, to review Plaintiff's status and recommended that he be transferred to the medium security facility at Occoquan or another medium security facility. Plaintiff's Complaint, Ex. D.

Plaintiff further alleges that Defendant David D. Roach, warden of the maximum security facility, approved the recommendation. Plaintiff's Complaint at 5. Not knowing of the approval, Plaintiff submitted a request on January 20, 1994, for a review of his housing status. Plaintiff's Complaint, Ex. C. An attorney from the D.C. Public Defender's Prisoner's Rights Program wrote a letter on February 28, 1994, on Plaintiff's behalf, also requesting a review. Plaintiff's Complaint, Ex. E. On March 9, 1994, Defendant Roach responded to the letter written by Plaintiff's counsel, stating that Plaintiff would be moved to a less restrictive facility when space became available. Plaintiff's Complaint, Ex. F. Despite the classification board's alleged recommendation, made four days after Plaintiff's initial placement at Lorton, Plaintiff remained in administrative segregation in the maximum security facility for four months, until mid-May, 1994.

Defendants argue that Plaintiff was properly placed in administrative segregation and that the housing board's initial decision to place him there was upheld by the Institutional Review Committee. Defendants' Response to the Order to Show Cause at 13. Defendants also contend that any procedural irregularity that did occur did not violate federal law.

### Motion to Dismiss Standards:

In ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, the Court must accept as true each of the allegations in the complaint. The motion should not be granted unless it appears that the plaintiff can prove no set of facts entitling him to the relief sought in the complaint. See, e.g., Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1977).

### II. Analysis

■ Plaintiff filed this action pro se pursuant to 42 U.S.C. § 1983 alleging that his initial placement and continued holding in administrative segregation at the maximum security facility violated his due process rights under the Fifth and Fourteenth

1. Lorton Regulations Approval Act of 1982 (LRAA) § 201.3.

amendments of the federal Constitution.[2] Plaintiff also argues that Defendants violated his equal protection rights under the Fourteenth Amendment and his right not to be subject to cruel and unusual punishment under the Eighth Amendment.

■ Plaintiff named as defendants the District of Columbia; Sharon Pratt–Kelly, mayor of the District of Columbia; Margaret A. Moore, director of the D.C. Department of Corrections; David D. Roach, warden of Lorton's maximum security facility; and Mr. Hammond, unit case manager at the facility. Plaintiff is suing Defendants in both their individual and official capacities.[3]

II A. *Fourteenth Amendment Liberty Interest*

■ Fourteenth Amendment liberty interests may arise from the Due Process Clause itself or from state law. *Hewitt v. Helms,* 459 U.S. 460, 466, 103 S.Ct. 864, 868–869, 74 L.Ed.2d 675 (1983). Being transferred from one facility to another does not implicate the Due Process Clause, even if a "change in conditions of confinement ha[s] a substantial adverse impact on the prisoner." *Meachum v. Fano,* 427 U.S. 215, 224–225, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976). Neither does the Due Process Clause independently protect any liberty interest in avoiding confinement in administrative segregation. *Hewitt,* 459 U.S. at 468, 103 S.Ct. at 869–870.

The question then is whether the Lorton Regulations Approval Act creates a constitutionally protected interest in being released from administrative segregation. The Supreme Court recently reformulated the test for determining when state prison regulations create liberty interests. *Sandin v. Conner,* —— U.S. ———— ——, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995). In *Sandin,* the Court abandoned the methodology established in *Hewitt* and *Kentucky Dept. of Corrections v. Thompson,* 490 U.S. 454, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989).[4]

Because the *Sandin* Court believed the *Hewitt* approach "strayed from the real concerns undergirding the liberty protected by the Due Process Clause," the Court decided to return to the due process principles established in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) and *Meachum.* The *Sandin* Court held:

> Following *Wolff,* we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause ... But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force ... nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Sandin,* —— U.S. at ———— ——, 115 S.Ct. at 2300.

---

2. Defendants argue that the Court should dismiss Plaintiff's suit because it should have been brought as a habeas corpus action rather than under § 1983. Last year in *Heck v. Humphrey,* —— U.S. ——, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), the Supreme Court reaffirmed its holding in *Preiser v. Rodriguez,* 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), that a claim is properly brought under § 1983 where the prisoner challenges the conditions of his confinement rather than the validity of his sentence. Because Plaintiff in the case at hand challenges only the conditions of his confinement, not its lawfulness, his claim is properly brought under § 1983. *See Heck,* —— U.S. at ——, 114 S.Ct. at 2372.

3. The Court treats a suit against officials of the District of Columbia in their official capacities as a suit against the District of Columbia. *See Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)

(holding that a municipality is a "person" in § 1983 actions).

4. Under *Hewitt,* in order for a state law establishing procedural guidelines for prisons to create a liberty interest, the law must use "explicitly mandatory language" that forbids certain outcomes absent "specific substantive predicates." *Hewitt,* 459 U.S. at 472, 103 S.Ct. at 871. This approach focused on the language of the regulation rather than the nature of the deprivation and "encouraged prisoners to comb regulations in search of mandatory language on which to base entitlements to various state-conferred privileges." *Sandin,* —— U.S. at ——, 115 S.Ct. at 2299. The methodology of *Hewitt* has discouraged states from codifying prison management procedures and involved federal courts in the day-to-day management of prisons. *Id.* at ———— ——, 115 S.Ct. at 2299.

In *Sandin*, the plaintiff was involved in an altercation with a prison guard and charged with misconduct. The plaintiff appeared before an adjustment committee, which refused his request to present witnesses at the hearing. The committee found him guilty and sentenced him to 30 days disciplinary segregation. Nine months later, an administrator found one of the charges against the plaintiff unsupported and expunged his record of that charge. *Sandin*, —— U.S. at —— – ——, 115 S.Ct. at 2294–96. Alleging a deprivation of due process related to the disciplinary hearing, the plaintiff sued for injunctive relief, declaratory relief and damages. *Id.* at ——, 115 S.Ct. at 2296. The Court of Appeals for the Ninth Circuit found that the plaintiff had a liberty interest in remaining free from disciplinary segregation based on a prison regulation that "instructs the committee to find guilt when a charge of misconduct is supported by substantial evidence." *Id.* at —— – ——, 115 S.Ct. at 2296.

The Supreme Court applied its new test and reversed. The Court found that segregated confinement of inmates did not implicate the Due Process Clause because it did not "present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Id.* at ——, 115 S.Ct. at 2301. The Court noted that disciplinary segregation conditions were substantially similar to those faced by inmates in administrative segregation and protective custody. *Id.* Therefore, the plaintiff's confinement "did not exceed similar, but totally discretionary confinement in either duration or degree of restriction." *Id.* The Court further noted that even inmates in the general population at the prison in question are subject to significant amounts of "lockdown time." *Id.* Because the plaintiff's confinement for 30 days in disciplinary segregation "did not work a major disruption in his environment," the Court held that the prison regulation had not created a constitutionally protected liberty interest. *Id.* at ——, ——, 115 S.Ct. at 2301.

■ Under the principles set forth in *Sandin*, this Court finds that the Lorton Regulations Approval Act does not create a liberty interest in remaining free from administrative segregation. The deprivations allegedly suffered by Plaintiff are not of the "atypical" or "significant" kind that the Supreme Court has determined constitute deprivations in which a state might create a liberty interest. Although a prisoner confined to administrative segregation has fewer privileges and can spend less time outside of his cell, he is still allowed to receive uncensored correspondence, to have visitors, to have items purchased from the canteen, to smoke, to have access to reading materials and radios, and to have work assignments.[5] These conditions are not dramatically different from what prisoners expect to encounter in the open population. Therefore, the Court finds that the LRAA does not create a liberty interest in avoiding confinement in administrative segregation.

## II B. *Equal Protection Claim*

Because Plaintiff has not set forth any facts supporting an equal protection claim, the Court grants Defendants' motion to dismiss with respect to this claim.

## II C. *Cruel and Unusual Punishment Claim*

The Eighth Amendment provides, "Excessive bail shall not be required, . . . nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Supreme Court set forth the standards for analyzing cruel and unusual punishment claims in *Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). The Court invoked a two-prong analysis. The first prong is an objective inquiry as to whether the prisoner was deprived "of the minimal civilized measure of life's necessities." *Id.* at 298, 111 S.Ct. at 2324. The second prong is a subjective test in which the plaintiff must demonstrate that the prison officials acted with at least deliberate indifference. *Id.* at 298–305, 111 S.Ct. at 2324–27. In the instant case, Plaintiff was not deprived of any necessities of life. Placement in administrative segregation limits a prisoner's time out of his cell and his opportunities for recreation and socializing. The

5. LRAA § 201.4.

Court finds that these harms do not rise to the level of cruel and unusual punishment.

For the foregoing reasons, the Court grants Defendants' motion to dismiss.