Albert WINFREY, Plaintiff,

v.

Thomas ULTSCH, James Muir, Defendants.

No. 94–C–126.

United States District Court, E.D. Wisconsin.

Aug. 14, 1995.

———

Albert Winfrey, Minneapolis, MN, pro se.

Mark Vannucci, Deputy Corp. Counsel, Racine, WI, for defendant.

DECISION and ORDER

MYRON L. GORDON, District Judge.

Pro se plaintiff Albert Winfrey commenced this 42 U.S.C. § 1983 action against the defendants, employees at the Racine county jail ["R.C.J."], on February 2, 1994. Mr. Winfrey, at all times relevant to this action, was an inmate of the R.C.J., although he has since been released from custody. A trial to the court was conducted on August 7, 1995. This opinion constitutes the court's findings of fact and conclusions of law pursuant to Rule 52, Federal Rules of Civil Procedure.

The defendants filed a motion to dismiss Mr. Winfrey's complaint and two subsequent motions for summary judgment. Resolution of these motions resulted in the dismissal of all of the plaintiff's claims, with the exception of Mr. Winfrey's claim that he was denied due process in connection with disciplinary action taken against him for the battery of inmate John Wood at the R.C.J. Mr. Winfrey pled no contest to, and was convicted on, a state charge of battering Mr. Wood. In a July 25, 1995, decision and order, I held that Mr. Winfrey's conviction collaterally estopped him from arguing in the present action that he did not commit the battery which resulted in his placement in disciplinary segregation in the R.C.J. Consequently, Mr. Winfrey's discipline was justified; he suffered no actual injury as a result of the alleged denial of due process. Therefore, he could recover only nominal damages if he was able to prove that the defendants violated his due process rights. *See Carey v. Piphus,* 435 U.S. 247, 262, 98 S.Ct. 1042, 1051, 55 L.Ed.2d 252 (1978); *Akbar v. Fairman,* 788 F.2d 1273, 1277 (7th Cir.1986).

## I. BACKGROUND

The plaintiff was confined in the R.C.J. from approximately August 22, 1993, to December 21, 1993. Defendant James Muir was employed as a corporal at the R.C.J. at the time of the occurrences which are the subject of this action. Defendant Thomas Ultsch was employed at the R.C.J. as a cap-

tain during the time that Mr. Winfrey was confined in that institution.

On November 5, 1993, Mr. Muir met with the plaintiff regarding a written report which had been prepared as a result of an incident which occurred on October 30, 1993, involving Mr. Winfrey's alleged battery of Mr. Wood. Mr. Muir conducted an initial hearing on November 5, 1993. At that hearing Mr. Muir advised the plaintiff of the charges against him and his right to a hearing on those charges. Mr. Muir also dropped one of the three charges contained in the written report and recommended disciplinary action consisting of twenty days confinement in disciplinary segregation. Mr. Winfrey advised Mr. Muir that he wanted a hearing on the charges, but Mr. Winfrey also informed him that he would like two days to consider Mr. Muir's recommendation. The plaintiff was not provided with a written copy of the charges at that time as he did not request a copy.

On November 9, 1993, Mr. Ultsch met with Mr. Winfrey regarding the conduct report. The parties dispute what occurred during this meeting. Mr. Winfrey claims that he requested a full hearing on the charges during his meeting. Mr. Ultsch asserts that he met with the plaintiff on that date and offered him discipline consisting of twenty days of confinement in disciplinary segregation with credit for the eleven days that Mr. Winfrey had served in administrative segregation subsequent to October 30, 1993. Mr. Ultsch testified that the plaintiff accepted his recommendation, thus obviating the need for a disciplinary hearing.

After that meeting, Mr. Winfrey was moved from administrative confinement to disciplinary confinement. Inmates confined in the disciplinary segregation unit of the R.C.J. lose some of the privileges provided to inmates in the general population. Inmates confined in disciplinary segregation are denied, among other things: (1) visitation privileges, with the exception of visits from clergy or their lawyers; (2) telephone privileges; (3) television privileges; and (4) the ability to receive mail, other than legal mail.

At the close of trial, the defendants moved for dismissal of the plaintiff's action based upon *Sandin v. Conner*, —— U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), in which the Supreme Court held that Mr. Conner's confinement in disciplinary segregation did not present "the type of atypical, significant deprivation in which the state might conceivably create a liberty interest." —— U.S. at ——, 115 S.Ct. at 2301. The defendants argue that Mr. Winfrey's disciplinary confinement, like Mr. Conner's, did not implicate a constitutionally protected liberty interest.

## II. ANALYSIS

Prior to the Supreme Court's decision in *Sandin*, an inmate retained a liberty interest in remaining free from confinement in segregation where the state created a protected liberty interest through use of "language of an unmistakably mandatory character" in its administrative regulations. *See Hewitt v. Helms*, 459 U.S. 460, 471–72, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983). Thus, before *Sandin*, when prison regulations created a liberty interest in remaining free from disciplinary segregation, an inmate was entitled to the procedural protections set forth in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), prior to his placement in such confinement. *See Rasheed–Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir.1992).

However, the United States Supreme Court in *Sandin* "sounded the death knell" for claims alleging that the imposition of disciplinary segregation necessarily entitles an inmate to the protections outlined in *Wolff* where mandatory language is present in administrative regulations. *Uzzell v. Scully*, 893 F.Supp. 259 (S.D.N.Y.1995). As stated above, in *Sandin*, the Supreme Court held that Mr. Conner's confinement in disciplinary segregation "did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." —— U.S. at ——, 115 S.Ct. at 2301. The Court relied upon three factors in making this determination: (1) confinement in disciplinary segregation mirrored conditions of administrative segregation and other forms of discretionary confinement; (2) based on a comparison between inmates in-

side and outside segregation, the state's action in placing him there did not work a major disruption in Mr. Conner's environment; and (3) the state's action did not inevitably affect the duration of Mr. Conner's sentence.

In *Sandin,* the Court moved away from its approach in previous cases wherein it had found liberty interests to be present where prison regulations contained "mandatory language" and "specific substantive predicates." *Kentucky Department of Corrections v. Thompson,* 490 U.S. 454, 462–63, 109 S.Ct. 1904, 1910, 104 L.Ed.2d 506 (1989); *Hewitt,* 459 U.S. at 472, 103 S.Ct. at 871. The Court shifted its focus from the language of the prison regulations to the nature of the deprivation.

▪ After *Sandin,*

states may grant prisoners liberty interests in being in the general population only if the conditions of confinement in segregation are significantly more restrictive than those in the general population.

*Whitford v. Boglino,* 63 F.3d 527, 533–534 (7th Cir.1995). Confinement in disciplinary segregation implicates a protected liberty interest only where such confinement "caused a major disruption" in the inmate's environment and imposed an "atypical and significant hardship upon the inmate." *Sandin,* — U.S. at ——, 115 S.Ct. at 2301.

▪ In the case at bar, Mr. Winfrey's placement in disciplinary segregation resulted in the revocation of a number of privileges to which inmates confined in the general population at the R.C.J. are entitled. As discussed above, inmates confined in disciplinary segregation are subject to restrictions on visitation, telephone and television privileges, their ability to receive mail, as well as other restrictions.

Mr. Winfrey's confinement in disciplinary segregation was somewhat different than the situation faced by Mr. Conner; Mr. Winfrey's confinement in disciplinary segregation at the R.C.J. resulted in the loss of privileges possessed by inmates confined in either the general population or administrative segregation. Admittedly, the conditions of Mr. Win-

frey's confinement in disciplinary segregation at the R.C.J. were more stringent than the conditions of the confinement he would have endured in either administrative segregation or the general population. However, the plaintiff's brief confinement in disciplinary segregation did not constitute an atypical, significant deprivation which was a dramatic departure from his basic conditions of confinement. "Generally, revocation of privileges is within the expected scope of a prison sentence." *Whitford,* 63 F.3d at 533 n. 7.

In my opinion, Mr. Winfrey's placement in disciplinary segregation "did not work a major disruption in his environment." *See San-din,* — U.S. at ——, 115 S.Ct. at 2301. His discipline did not result in the deprivation of any necessities nor did it affect the duration of his sentence. Therefore, the plaintiff did not have a federally protected liberty interest in remaining in the general population. As I find that Mr. Winfrey did not have a liberty interest in remaining free from disciplinary segregation, I need not resolve the question of whether the defendants denied him due process in connection with the disciplinary action.

### ORDER

IT IS ORDERED that the defendants' motion for dismissal of the plaintiff's action be and hereby is granted.

IT IS ALSO ORDERED that the clerk of court, pursuant to Rule 58, Federal Rules of Civil Procedure, be and hereby is directed to enter judgment dismissing this action, with prejudice.