70 F.3d 1274
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
James P. CLAYTON, Plaintiff-Appellant,
v.
Thomas MORRIS et al., Defendants-Appellees.
 No. 94-2077.
 United States Court of Appeals, Seventh Circuit.
 Submitted Nov. 3, 1995.*
Decided Nov. 17, 1995.
 ORDER
 I. Background
 
 1
 Clayton, a prisoner at Stateville Correctional Center, brings this Sec. 1983 claim against Morris, Richardson, Duckworth, Fleming, O'Leary, and Godinez, all of whom were employed at Stateville during the time period relevant to the complaint. Clayton seeks relief based upon three theories, all of which stem from his placement in segregation from November 13 until December 12, 1989. First, he claims that he was placed in disciplinary segregation without due process in violation of the 14th Amendment. Second, he claims that while in segregation he was unconstitutionally denied access to the law library, in violation of his constitutional right of access to the courts. See Bounds v. Smith, 430 U.S. 817, 821 (1977). Third, he claims that the conditions of his confinement violated the Eighth Amendment's prohibition against cruel and unusual punishment.
 
 
 2
 The district court granted defendants' motion for summary judgment on all counts and denied plaintiff's summary judgment motion. Plaintiff appeals this order and we affirm.
 
 II. Analysis
 A. Segregation and Due Process
 
 3
 In the present case there is no dispute that Clayton was given no hearing either before or following his segregation. (R. 86 at 4.) In sum, Clayton was given no process and the only dispute is whether any was due. This turns on whether the defendants deprived him of a liberty interest by placing him in segregation.
 
 
 4
 Liberty interests may arise from state law or from the due process clause itself. Pardo v. Hosier, 946 F.2d 1278, 1281 (7th Cir.1991). In the present case, the defendants, merely by placing Clayton in segregation for only one month, clearly did not infringe upon a liberty interest created by the Due Process Clause itself. See Whitford v. Boglino, 63 F.3d 527, 532 (7th Cir.1995) (holding that as a matter of law, segregation for a period of six months did not invade a liberty interest created by the Due Process Clause). Therefore, Clayton can only prevail if the segregation invaded a liberty interest that state laws or regulations created.
 
 
 5
 The Supreme Court recently announced that state law can only create a liberty interest for prisoners in the limited circumstances in which restrictions "impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 115 S.Ct. 2293, 2300 (1995). In so holding, the Court declared that it was returning to the due process principles that had been correctly established in Wolff v. McDonell, 418 U.S. 539 (1974), and Meachum v. Fano, 427 U.S. 215 (1976). Id. In sum, the Sandin Court declared that courts should not find liberty interests based merely upon the state's use of mandatory language in codes and prison regulations. Such an interest, the Court declared, should only arise when the "State [has] created an interest of 'real substance.' " Sandin, 115 S.Ct. at 2298. It is the "atypical and significant" hardship test that is to be used to weed out those regulations that do not create such interests.
 
 
 6
 The present appeal was brought prior to Sandin. The parties have briefed the case based upon the pre-Sandin case law, with the major disagreement being whether Clayton was segregated pursuant to Ill.Admin.Code tit. 20, Secs. 504.600-504.650, as defendants claim, or pursuant to Secs. 504.10-504.90, as Clayton argues. Under pre-Sandin doctrine this dispute was significant. The provisions cited by Clayton contain mandatory language, while those cited by the defendants do not. This factual dispute, however, is irrelevant in the post-Sandin era. Even though the parties have not had an opportunity to argue this case in the shadow of Sandin, we can nevertheless decide this case based upon the record presented.
 
 
 7
 Sandin has resulted in a split among circuits over whether disciplinary segregation can ever result in a cognizable claim if such segregation falls short of depriving the prisoner of a liberty interest that arises under the Due Process Clause of its own accord. In an opinion issued on the heels of the Sandin decision, we indicated that without further factual findings we would not categorically say that six months of disciplinary segregation at an Illinois prison did not invade a state created liberty interest. Whitford, 63 F.3d at 533. In the instant case, however, the record is sufficiently developed for us to determine that Clayton's one month of confinement, irrespective of whether we characterize it as disciplinary segregation, did not invade a state created liberty interest.
 
 
 8
 Two factors drive our decision. First, Clayton was confined in segregation for only one month, the same amount of time that the plaintiff in Sandin was confined. Second, even though the Illinois Administrative Code requires officials to follow mandatory procedures before placing a prisoner in disciplinary segregation, another portion of the Code that does not use mandatory language allows officials to take the actions that defendants took against Clayton for non-punitive purposes. Therefore, irrespective of defendants' subjective intent, their actions complied with regulations that did not use mandatory language and therefore did not invade a state created liberty interest.
 
 
 9
 The fact that Clayton was confined in segregation for only 30 days demonstrates that his conditions did not amount to the type of "major disruption in his environment" that Sandin indicated was necessary to a court's finding an invasion of a state created liberty interest. 115 S.Ct. at 2301. While in Whitford we did not explicitly state that it was the length of the plaintiff's segregation that caused us to remand for a determination of whether the defendants had deprived the plaintiff of a liberty interest, rather than affirm summary judgment for the defendants, the length of time of a prisoner's segregation is, as a matter of logic, a significant factor in our determination of whether the confinement is an "atypical and significant hardship ... in relation to ordinary incidents of prison life." See Sandin, 115 S.Ct. at 2300. We conclude that in light of Sandin, segregation for a period as short as thirty days does not implicate a state created liberty interest.
 
 
 10
 In addition, Ill.Admin.Code tit. 20, Secs. 504.660 gives officials broad discretion to place prisoners in confinement for administrative purposes under conditions mirroring those that Clayton endured. It is true that Sec. 504.20 sets out mandatory criteria that must be met before someone is placed in confinement for disciplinary reasons. However, because prison officials were given discretion to impose the conditions that they placed upon Clayton, we find that there could be no state created liberty interest irrespective of defendants' subjective intent, or the technical classification of Clayton's segregation. See Sandin, 115 S.Ct. at 2301 ("[Plaintiff's] confinement did not exceed similar, but totally discretionary confinement in either duration or degree of restriction."). While it is true that Sandin was critical of cases that focused upon the language of regulations in order to determine whether a liberty interest was present, this criticism was aimed at viewing such mandatory language as a sufficient basis for finding a liberty interest. Even after Sandin, mandatory language remains a necessary element for finding a state created liberty interest.
 
 B. Access to the Courts
 
 11
 There is disagreement between the parties as to whether Clayton received any access to the law library during the period in question. We agree with the district court that whether Clayton can survive summary judgment upon this issue does not turn on whether he was given no access to the library as he claims or 2.5 hours as defendants claim, but rather upon whether he has suffered some detriment due to his lack of access. Shango v. Jurich, 965 F.2d 289, 292 (7th Cir.1992).
 
 
 12
 In the present case, Clayton claims two separate harms due to his lack of access to the library. First, he claims that he was unable to recover his costs in a mandamus action in which he had prevailed, because, by being prevented from using the library, he was unable to make copies of his receipts to supply to the court. Second, he argues that he was delayed in filing a petition for habeas corpus, and that therefore he did not receive relief as quickly as he would have had he been given access to the library.
 
 
 13
 Neither of Clayton's alleged harms rises to the level of a claim of denial of his "right to access to the courts" within the meaning of Bounds. 430 U.S. at 821. Prisoners are not guaranteed unlimited access to law libraries, but are given a derivative right to use law libraries as part of their right to have meaningful access to the courts. See Shango, 965 F.2d at 291 ("[P]rison officials need not provide both an adequate law library and adequate legal assistants.... [r]ather, the program as a whole must .. provide meaningful access to the courts."); Hossman v. Spradin, 812 F.2d 1019, 1021 (7th Cir.1987) ("[W]here meaningful access to the courts is not denied ... inconvenient or even highly restrictive regulations governing the use of a prison law library, [violate] no constitutional guarantee to court access....).
 
 
 14
 With regard to his petition for habeas corpus, Clayton does not allege that he was prevented from "bringing or prosecuting a law suit." Bruscino v. Carlson, 854 F.2d 162, 167 (7th Cir.1988), cert. denied, 491 U.S. 907 (1989). Clayton's claimed harm is that when he did get relief, it was not as soon as if he had been given access to the law library during the thirty days in question. A delay of thirty days in being allowed to file, where Clayton does not allege that he was barred by "a statute of limitations ... failed to make a timely filing ... or lost a case he should have won" does not amount to a deprivation of meaningful access to the courts.
 
 
 15
 Clayton's argument that his inability to use a photocopy machine resulted in his being denied reimbursement in a case in which he had prevailed also does not amount to a claim of being denied meaningful access to the courts. First, Clayton was under no deadline to submit his receipts, so that he could have waited until he had access to a copier before filing his motion for costs. (R. 50, Exhibit 1 at 32.) Second, Clayton did have the original receipts and could have filed such with his petition for costs. While each of these alternatives may have presented an inconvenience, neither of them amounted to an unconstitutional deprivation of access to the courts.
 
 C. The Eighth Amendment
 
 16
 In his brief on appeal, Clayton does not address the district court's holding that his conditions of confinement did not amount to cruel and unusual punishment within the meaning of the Eighth Amendment. He has thus not complied with Fed.R.App.P. 28(a)(6). Therefore, we need not address the issue of whether the conditions of Clayton's confinement amounted to cruel and unusual punishment.
 
 
 17
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that the parties could file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement has been filed. Accordingly, the appeal is submitted on the briefs and the record