**Lorenzo L. STONE–BEY, Plaintiff,**

v.

**John BARNES, C.A.B. Chairman, Defendant.**

No. 2:93–CV–0198 AS.

United States District Court, N.D. Indiana, Hammond Division.

Jan. 29, 1996.

Lorenzo L. Stone–Bey, Michigan City, IN, pro se.

Charles E. Doyle, Beverly Shores, IN, for Lorenzo L. Stone–Bey.

Diane Marger Moore, Office of Indiana Attorney General, Indianapolis, IN, for H. Christian Debruyn, Robert Farley.

Diane Marger Moore, David A. Arthur, Indiana Attorney General, Office of Indiana Attorney General, Indianapolis, IN, for Karl Swinehart.

David A. Arthur, Indiana Attorney General, Indianapolis, IN, for John Barnes.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

### I. BACKGROUND

On September 22, 1995, this court entered a memorandum and order addressing the cross-motions for summary judgment of plaintiff Lorenzo Stone–Bey and defendants Karl Swihart and John Barnes. This court takes note of its Memorandum and Order entered on September 22, 1995, and reported as *Stone–Bey v. Swihart*, 898 F.Supp. 1287 (N.D.Ind.1985). The court further directs the parties to that order for a statement of the facts relevant to this case. *Id.*, at 1291–92. In *Stone–Bey*, this court: (1) granted Mr. Karl Swihart's motion for summary judgment, dismissing him as a defendant in this case; (2) denied Mr. Stone–Bey's motion for summary judgment; and (3) directed the parties to file a brief on the issue of whether Mr. Stone–Bey had a protected liberty interest in his Conduct Adjustment Board ("CAB") hearing sufficient to trigger due process under the recent landmark decision by the Supreme Court of the United States in *Sandin v. Conner*, —— U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Mr. Stone–Bey satisfied this court's directive by filing "Plaintiff's Brief in Response to Court Order of September 22, 1995" on November 1, 1995. The Indiana Attorney General's Office filed its "Supplemental Memorandum" for defendant Barnes on November 22, 1995.

### II. ISSUES

The issues now properly before the court are the following: (1) under the Fourteenth Amendment to the United States Constitution, should this court recognize that Mr. Stone–Bey has a state created liberty interest in remaining in the general population of the Indiana State Prison by virtue of his sanction placing him in disciplinary segregation for one-year as a result of his CAB conviction; and, if such a liberty interest

does exist, (2) did Mr. Stone–Bey receive the due process protections required by the Supreme Court of the United States in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), in his prison disciplinary proceeding.

### III. ARGUMENTS

In "Plaintiff's Brief in Response to Court Order of September 22, 1995," Mr. Stone–Bey raises two arguments for the proposition that his sanction to disciplinary segregation for one-year created a protected liberty interest. First, Mr. Stone–Bey argues that the conditions of the cell where he was confined during his one-year in disciplinary segregation exceeded the expected conditions and hardships of prison life. Relying on *Rowe v. DeBruyn*, 17 F.3d 1047 (7th Cir.1994), Stone–Bey argues that the court should look closely to the nature and degree of the deprivation encountered by the prisoner when determining whether a state created liberty interest exists. Based upon the length of his sanction and the conditions to which he was subjected, Stone–Bey argues that his segregation caused a "major disruption" in his prison environment and imposed an "atypical and significant hardship" on him, thus creating a liberty interest under the holdings in *Sandin*.

Second, Mr. Stone–Bey argues that his placement in disciplinary segregation created a protected liberty interest because his placement in disciplinary confinement will ultimately affect the duration of his sentence. Stone–Bey first argues that he was denied the opportunity to petition for consideration of clemency upon his placement in disciplinary segregation. He further argues that his disciplinary sanction will also affect his chances for parole in the future, thus also affecting the duration of his sentence. He argues that a prisoner's record and conduct are among the considerations used to determine a prisoner's parole eligibility. Ind.Code § 11–13–3–3. He claims that although the parole board is not required to deny parole based upon his placement in disciplinary segregation, the parole board will more than likely deny him the opportunity to be released on parole. Thus, his placement into disciplinary segregation affects the duration

of his sentence, creating for him a protected liberty interest arising under the Due Process Clause itself.

Once the court presumably finds that he had a liberty interest in remaining in the general prison population, Mr. Stone–Bey then argues that he had a right to due process protection in the CAB hearing before his period of disciplinary segregation could commence. Stone–Bey claims that he was not afforded his due process rights in the CAB hearing. He alleges that there is no adequate written record of the disciplinary proceedings against him in order to determine whether the determination of his guilt was reached fairly. He also alleges that there was insufficient evidence presented at the CAB hearing to find him guilty of the charged violation. He claims that the name or the presence of the mysterious supporting witness whose statement was the main evidence relied upon by the CAB in making its determination of guilt is nowhere to be found in the record. Thus, Stone–Bey requests this court to find that he was arbitrarily deprived of his liberty interest in remaining in the general prison population when he was placed into disciplinary segregation based upon an inadequate record and insufficient evidence. He requests damages in the form of (1) declarative relief that the defendant violated his procedural due process rights under the Fourteenth Amendment, (2) nominal damages of one dollar ($1.00) for the defendant's violation of his procedural due process rights, and (3) punitive damages from the defendant in the amount of one hundred thousand dollars ($100,000.00).

The defendant filed his supplemental memorandum on November 22, 1995, in which he makes a renewed motion for summary judgment. In this memorandum, the defendant first claims that the statement of the confidential informant relied upon by the CAB was contained in the prison investigative file at the time of the hearing. The defendant argues that since this statement was in existence and made part of the prison investigative file, it was properly relied upon by the CAB when its decision was made to sanction Mr. Stone–Bey with one-year in disciplinary

segregation. He also argues that there was no deprivation of due process in the CAB hearing as the informant's statement constituted "some evidence" under the standards set forth in *Superintendent, Mass. Corr. Inst. at Walpole v. Hill*, 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985) and *Mendoza v. Miller*, 779 F.2d 1287 (7th Cir.1985). As a result, the defendant moves this court to grant summary judgment for the defendant.

Finally, on page 5 of his supplemental memorandum, the defendant reached the issue on which this court directed the parties to file supplemental briefs; whether Mr. Stone–Bey had a liberty interest in remaining in the general prison population under the Fourteenth Amendment pursuant to the Supreme Court's decision in *Sandin*. The defendant first claims that under Indiana Code § 11–11–5–4, a prisoner cannot be subjected to certain types of actions as punishment and cannot be deprived of certain minimal conditions or programs. Thus, based solely upon this statute, the defendant argues that "by the very statutes that allow disciplinary actions to be taken, the Department is precluded from imposing discipline that would be an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' "[1]

As for Mr. Stone–Bey's claim that he has a liberty interest in the CAB hearing because the decision to place him in disciplinary segregation for one-year will ultimately affect the duration of his sentence, the defendant claims that there is no certainty such a placement will inevitably affect the duration of Stone–Bey's sentence. The defendant points out that, for most inmates, only sanctions such as the deprivation of earned credit time or the demotion in credit time earning class will impact on the date of mandatory release to parole under Indiana Code § 35–50–6–1. However, since Mr. Stone–Bey is sentenced to a life sentence, he is considered an "old code" offender and his release is at the discretion of the Indiana Parole Board. The defendant, thus, argues that like inmate Conner in *Sandin*, Mr. Stone–Bey cannot establish that the duration of his sentence will

---

1. See Defendant's Supplemental Memorandum, p. 6.

inevitably be affected by his placement in disciplinary segregation because in Indiana, like Hawaii, disciplinary action is one of the many considerations that the Indiana Parole Board will look to in determining Mr. Stone–Bey's chances for parole. The defendant thus requests this court to grant summary judgment in his favor because, "there is no right not be [sic] placed in segregation under the holdings in Sandin and, therefore, even were there not clearly sufficient evidence to support the finding of guilty [sic] there is not and could not be a deprivation of a protected liberty interest in this case." [2]

## IV. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *Russo v. Health, Welfare & Pension Fund, Local 705*, 984 F.2d 762 (7th Cir.1993).

A thorough discussion of Rule 56 by the Supreme Court of the United States can be found in a trilogy of cases decided in 1986. *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) [3]; and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).[4] *Celotex* addressed the initial burdens of the parties under Rule 56, and *Anderson* addressed the standards under which the record is to be analyzed within the structure of Rule 56.

The initial burden is on the moving party to demonstrate, "with or without supporting affidavits," the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56). A material question of fact is a question which will be outcome determinative of an issue in the case. The Supreme Court has instructed that the facts material in a specific case shall be determined by the substantive law controlling the given case or issue. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine [material] issue for trial.'" *Id.* The nonmoving party cannot rest on its pleadings, *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920–21 (7th Cir.1994); *Hughes v. Joliet Correctional Center*, 931 F.2d 425, 428 (7th Cir.1991), nor may that party rely upon conclusory allegations in affidavits. *Cusson–Cobb v. O'Lessker*, 953 F.2d 1079, 1081 (7th Cir.1992). "The days are gone, if they ever existed, when the nonmoving party could sit back and simply poke holes in the moving party's summary judgment motion." *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir.1990).

During its summary judgment analysis, this court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party; in this case Mr. Stone–Bey. *Smith v. Fruin*, 28 F.3d 646, 650 (7th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 735, 130 L.Ed.2d 638 (1995); *Brennan v. Daley*, 929 F.2d 346, 348 (7th Cir.1991). Furthermore, it is required to analyze summary judgment motions under the standard of proof relevant to the case or issue. *Anderson*, 477 U.S. at 252–55, 106 S.Ct. at 2512–14.

## V. DISCUSSION

Mr. Stone–Bey filed his complaint in this case pursuant to 42 U.S.C. § 1983, alleging

---

2. See Defendant's Supplemental Memorandum, p. 7.

3. For the judicial epilogue of *Celotex*, see *Catrett v. Johns–Manville Sales Corp.*, 826 F.2d 33 (D.C.Cir.1987), *cert. denied*, 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988).

4. The 1986 Supreme Court trilogy was later reexamined in *Eastman Kodak v. Image Technical Services*, 504 U.S. 451, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992), a case born in the context of antitrust law. The most that can be said for *Eastman Kodak*, however, is that it did not tinker with *Celotex* and *Anderson*, and possibly involves an attempt to clarify *Matsushita*. This view is well-supported by an in-depth academic analysis in Schwarzer, Hirsch, and Barrans, *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441 (1992).

that defendant Barnes, as the chairman of the CAB, violated his due process rights in his disciplinary hearing at the Indiana State Prison. Inherent in such an argument is the presupposition that Mr. Stone–Bey has a liberty interest in remaining in the general prison population and out of disciplinary segregation.

In its September 22, 1995 memorandum and order, this court dealt extensively with the preliminary issue of whether Mr. Stone–Bey may challenge the constitutionality of his CAB conviction in a suit for damages under § 1983. *See Heck v. Humphrey,* —— U.S. ——, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). This court held that, "at this point, this court does not equate a prison disciplinary proceeding to a 'criminal judgment,'" and, thus, *Heck* does not apply in this case. *Stone–Bey,* 898 F.Supp. at 1294. Therefore, this issue need not be revisited in this order, and the court will now move on to the merits of Mr. Stone–Bey's claim under the Due Process Clause, analyzing it under the decision of the Supreme Court of the United States in *Sandin v. Conner.*

■ The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV. Thus, when a plaintiff brings an action under § 1983 for a violation of procedural due process, he must establish that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch,* 494 U.S. 113, 125, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990) (citing *Parratt v. Taylor,* 451 U.S. 527, 537, 101 S.Ct. 1908, 1914, 68 L.Ed.2d 420 (1981)). A liberty interest may arise from state law or from the Due Process Clause itself. *Pardo v. Hosier,* 946 F.2d 1278, 1281 (7th Cir.1991). Mr. Stone–Bey raises two separate arguments under *Sandin* to support his claim that he has a protected liberty interest in remaining in the general prison population: (1) that the conditions of the cell where he was confined during his one-year in disciplinary segregation exceeded the expected conditions and hardships of prison life, creating a liberty interest arising under state law; and

(2) since he could not petition for consideration of clemency and because his chances for parole may be diminished because of his placement in disciplinary segregation, such confinement will inevitably affect the duration of his sentence, creating a liberty interest under the Due Process Clause itself.

Prior to the Supreme Court's decision in *Sandin,* an inmate retained a liberty interest in remaining free from confinement in segregation where the state created a protected liberty interest through the use of "language of an unmistakenly mandatory character" in its prison administrative regulations. *See Hewitt v. Helms,* 459 U.S. 460, 471–72, 103 S.Ct. 864, 871–72, 74 L.Ed.2d 675 (1983). Thus, before *Sandin,* when a state's prison regulations created a liberty interest in remaining free from disciplinary segregation, an inmate was entitled to the procedural due process protections set forth in *Wolff* prior to his placement into disciplinary segregation. *See Rasheed–Bey v. Duckworth,* 969 F.2d 357, 361 (7th Cir.1992). However, in *Sandin,* the Supreme Court held that state prison regulations will now create enforceable liberty interests only in limited situations. *Sandin,* —— U.S. at ——, 115 S.Ct. at 2300; *Whitford v. Boglino,* 63 F.3d 527, 530 (7th Cir.1995).

This court has already published opinions dealing with some of the dimensions of the Supreme Court's important decision in *Sandin: See McKinney v. Hanks,* 911 F.Supp. 359 (N.D.Ind.1995); *Thomas v. Newkirk,* 905 F.Supp. 580 (N.D.Ind.1995); *Stone–Bey v. Swihart,* 898 F.Supp. 1287 (N.D.Ind.1995); and *Taifa v. Bayh,* 1995 WL 646300 (7th Cir. Sept. 26, 1995). In *Sandin,* the Supreme Court held the following:

> The time has come to return to the due process principles we believe were correctly established and applied in *Wolff* and *Meachum.* Following *Wolff,* we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. *But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force,*

*nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.* (Citations omitted) (Emphasis added)

*Sandin,* —— U.S. at ——, 115 S.Ct. at 2300. Applying this holding to the facts in *Sandin,* the Supreme Court concluded that sanctioning a prisoner to 30 days in disciplinary segregation "did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest. *Id.,* at ——, 115 S.Ct. at 2301.

## VI. POST–SANDIN ANALYSIS

As this court pointed out in its memorandum and order in *McKinney v. Hanks, supra,* the task of determining where the new fences are now located in the spectrum of prison disciplinary cases dealing with the determination of protected liberty interests for inmates will fall to the United States district judges and United States magistrate judges. Federal courts around the United States have been testing the judicial waters in an attempt to grasp the meaning of the Supreme Court's holding in *Sandin.*[5] With the foregoing in mind, the court will now address Mr. Stone–Bey's first argument that the law of the State of Indiana creates for him a liberty interest in remaining in the general prison population.

### A. LIBERTY INTEREST CREATED BY STATE LAW

Mr. Stone–Bey claims that during his one-year in disciplinary segregation, the conditions he faced exceeded the expected conditions and hardships of prison life, creating for him a liberty interest arising under state law. Stone–Bey's argument appears to be two-pronged. First, he argues that his one-year sanction to disciplinary segregation was beyond the 30 days in *Sandin,* thus constituting a penalty which fell outside the expected scope of his sentence. Second, he argues that the conditions of his confinement in disciplinary segregation were significantly more restrictive than those found in the general population and, thus, constituted an atypical and significant hardship for him under *Sandin.*

■ The court will first examine Mr. Stone–Bey's argument that his placement into disciplinary segregation for one-year by the CAB creates a protected liberty interest under *Rowe v. DeBruyn,* 17 F.3d 1047 (7th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 508, 130 L.Ed.2d 416 (1994). As part of this argument, Stone–Bey claims that the issue of disciplinary segregation has been enacted by the State of Indiana in §§ 11–11–5–2 through 11–11–5–7 of the Indiana Code and that these statutes address the issue of which types of punishment are allowed and which types are not allowed to be taken against an inmate.

In *Rowe,* the Seventh Circuit held that before a term of one-year in segregation may be imposed by a CAB, federal due process protections must be followed, as such a penalty falls outside the expected scope of an inmate's sentence. *Rowe,* 17 F.3d at 1053. However, it must be mentioned that *Rowe* was a decision reached before the advent of *Sandin.* The Seventh Circuit addressed this concern in *Whitford,* stating "the *Sandin* Court's observation that punishment for disciplinary violations is within the expected scope of a prison sentence calls *Rowe's* rea-

5. The result and reasoning of *Sandin* have been discussed recently by courts in this circuit on a variety of issues in the following cases: *Anderson v. Romero,* 72 F.3d 518 (7th Cir.1995); *Clayton v. Morris,* 1995 WL 686352 (7th Cir. Nov. 17, 1995), *Jones–Bay v. Wright,* 1995 WL 687661 (7th Cir. Nov. 16, 1995); *Williams v. Ramos,* 71 F.3d 1246 (7th Cir.1995); *Neal v. Fairman,* 1995 WL 649923 (7th Cir. Nov. 2, 1995); *Matthews v. Duckworth,* 1995 WL 508080 (7th Cir. Aug. 22, 1995); *Zarnes v. Rhodes,* 64 F.3d 285 (7th Cir. 1995); *Whitford v. Boglino,* 63 F.3d 527 (7th Cir.1995); *McKinney v. Hanks,* 911 F.Supp. 359 (N.D.Ind.1995); *Sasnett v. Sullivan,* 908 F.Supp. 1429 (W.D.Wis.1995); *Bryant v. Peters,* 1995 WL 708566 (N.D.Ill. Nov. 30, 1995); *Whittmore v. Washington,* 1995 WL 646391 (N.D.Ill. Oct. 23, 1995); *Robinson v. Howell,* 902 F.Supp. 836 (S.D.Ind.1995); *Stone–Bey v. Swihart,* 898 F.Supp. 1287 (N.D.Ind.1995); *Kirsch v. Franklin,* 897 F.Supp. 1173 (E.D.Wis.1995); *Martinkoski v. Wisconsin Dep't of Corrections,* 896 F.Supp. 882 (E.D.Wis.1995); *Leslie v. Doyle,* 896 F.Supp. 771 (E.D.Ill.1995); *Van Dyke v. Washington,* 896 F.Supp. 183 (C.D.Ill.1995); *Taifa v. Bayh,* 1995 WL 646300 (N.D.Ind. Aug. 22, 1995); *Winfrey v. Ultsch,* 895 F.Supp. 229 (E.D.Wis.1995); *Oswalt v. Godinez,* 894 F.Supp. 1181 (N.D.Ill.1995); and *Sanchez v. Roth,* 891 F.Supp. 452 (N.D.Ill.1995).

soning into question." *Whitford,* 63 F.3d at 533. In *Sandin,* the Supreme Court addressed a similar point, stating:

> Although Conner points to dicta in cases implying that solitary confinement automatically triggers due process protection, this Court has not had the opportunity to address in an argued case the question whether disciplinary confinement of inmates itself implicates constitutional liberty interests. We hold that Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which the state might conceivably create a liberty interest. (Citations omitted)

*Sandin,* ⸺ U.S. at ⸺, 115 S.Ct. at 2301.

In *Sandin,* based upon a comparison between inmates inside and outside disciplinary segregation, the Court found that the state's action in placing inmate Conner in disciplinary segregation for 30 days did not work a major disruption in his environment. *Id.* The holding in *Sandin* has created much uncertainty on the issue of what type and amount of punishment will amount to a "major disruption" in a prisoner's environment. Many courts have applied *Sandin* merely to dismiss cases in which prisoners have received 30 days or less in disciplinary segregation, finding that such punishment does not create an "atypical and significant hardship." [6] Other courts, including this court, have not limited the *Sandin* holding to cases where the discipline imposed on an inmate results in 30 days or less in disciplinary segregation.[7] The United States Court of Appeals for the Seventh Circuit has held as a matter of law that even if prisoners are entitled to due process protections prior to imposing extreme terms of segregation, six months was not an extreme term. *Whitford v. Boglino,* 63 F.3d 527, 533 (7th Cir.1995).

Based upon the language of *Sandin,* the Seventh Circuit's own questioning of *Rowe,* the Seventh Circuit's finding in *Whitford,* the court finds that Mr. Stone–Bey's placement in disciplinary segregation for one-year does not constitute an extreme term of segregation and, by itself, does not create a liberty interest under *Sandin.*

■ Aside from the length of the disciplinary confinement, it is also imperative to analyze whether the conditions of Mr. Stone–Bey's confinement were significantly more restrictive than those found in the general population. Stone–Bey argues that the conditions he faced while confined in disciplinary segregation were significantly more onerous than those in the general population. In his response, Mr. Stone–Bey describes the conditions present in disciplinary segregation at the Indiana State Prison as follows:

> "The plaintiff was sentenced for one-year to live in a bug-infested, unsanitary, bathroom-sized cell with no furnishings except a cot, toilet, and small basin. He was deprived of communal meals, recreation,

**6.** Cases in the Seventh Circuit which have reached such a result include *Whittmore v. Washington,* 1995 WL 646391 (N.D.Ill. Oct. 23, 1995) (30 days); *Riggins v. Cooper,* 1995 WL 771413 (N.D.Ill. Aug. 23, 1995) (15 days); *Kirsch v. Franklin,* 897 F.Supp. 1173 (E.D.Wis.1995) (13 days); and *Leslie v. Doyle,* 896 F.Supp. 771 (N.D.Ill.1995) (15 days).

**7.** See the following cases where courts have held that inmates do not have a protected liberty interest in remaining in the general prison population: *Tulloch v. Coughlin,* 1995 WL 780970 (W.D.N.Y. Dec. 22, 1995) (no liberty interest is implicated for an inmate placed in segregation for term of 180 days); *Carter v. Carriero,* 905 F.Supp. 99 (W.D.N.Y.1995) (a sanction to 270 days of disciplinary confinement was not an atypical or significant hardship under *Sandin* ); *Ishaaq v. Compton,* 900 F.Supp. 935 (W.D.Tenn. 1995) (mere confinement to segregation, whether punitive or administrative, does not constitute an

atypical and significant hardship for an inmate and thus cannot amount to a deprivation of a liberty interest); *Delaney v. Selsky,* 899 F.Supp. 923 (N.D.N.Y.1995) (stating in dictum that 197 days in disciplinary segregation does not create a liberty interest after *Sandin* ); and *Scales v. District of Columbia,* 894 F.Supp. 14 (D.D.C.1995) (placement in administrative segregation for four months is not violation of due process because not "atypical"). Within the Seventh Circuit, courts have held that a sanction of 34 days, *Williams v. Ramos,* 71 F.3d 1246 (7th Cir.1995), and 31 days, *Winfrey v. Ultsch,* 895 F.Supp. 229 (E.D.Wis.1995), in disciplinary segregation do not create liberty interests under *Sandin.* But, see also *Brooks v. DiFasi,* 1995 WL 780976 (W.D.N.Y. Dec. 29, 1995) (holding that a sanction of 376 days in disciplinary segregation is an "atypical and significant hardship" under *Sandin* based upon the length of confinement and pre-*Sandin* case law):

religious services, therapy, and educational programs. He had no access to radio or television and was subjected to extremes of temperature in an old inadequately ventilated building. No typewriters were allowed and access to the law library was only through an inmate clerk. No telephone calls were allowed and reading material was restricted. Since the opportunity to work was foreclosed, state pay was not available. This resulted in inmates without outside resources having no access to the commissary at all."

See Plaintiff's Brief in Response to Court Order of September 22, 1995 at pages 1–2.

■■■ The Seventh Circuit has held that, "[t]he holding in *Sandin* implies that states may grant prisoners liberty interests in being in the general population only if the conditions of confinement are significantly more restrictive than those in the general population." *Whitford,* 63 F.3d at 533. A prisoner is not wholly stripped of his constitutional rights when he enters prison, *Wolff,* 418 U.S. at 555, 94 S.Ct. at 2974, however, it must be remembered that " 'lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.' " *Jones v. North Carolina Prisoners Labor Union,* 433 U.S. 119, 125, 97 S.Ct. 2532, 2537, 53 L.Ed.2d 629 (1977) (quoting *Price v. Johnston,* 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948)). Also, discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law. *Sandin,* —— U.S. at ——, 115 S.Ct. at 2301. Further, courts have accorded prison officials wide latitude and deference in executing policies and practices that in their judgment are needed to preserve internal order, discipline and security. *Pardo,* 946 F.2d at 1280 (7th Cir.1991). It must be noted that even in the general population, "inmates cannot expect the amenities, conveniences and services of a good hotel." *Harris v. Fleming,* 839 F.2d 1232, 1235 (7th Cir.1988).

This court readily admits that this is a very close case, and relies on the Seventh Circuit's decision in *Williams v. Ramos,* 71 F.3d 1246 (7th Cir.1995), as a barometer for determining whether the conditions of disciplinary confinement are significantly more restrictive than those in the general population. In *Williams,* an inmate presented claims very similar to those raised by Mr. Stone–Bey in this case. The inmate's disciplinary confinement in *Williams* was alleged to include the following conditions: the inmate was locked in a closed-front cell twenty-four hours a day; the inmate, while in disciplinary segregation, was not allowed to participate in a wide-variety of the activities available to inmates in the general population and non-segregated inmates housed in the same area; and the inmate lacked much contact with other inmates and staff. *Id.* As a result, the Seventh Circuit held that this "catalogue of harms" did not greatly exceed the conditions that one could expect from prison life generally. *Id.*

Although the length of the confinement in *Williams,* only 34 days total, is not as great as the time Mr. Stone–Bey was confined in disciplinary segregation, the court views the conditions found in the two cases to be very similar. Therefore, because discipline by prison officials taken in response to a wide range of misconduct falls within the expected parameters of an inmate's sentence and the lawful incarceration of an inmate does bring about the withdrawal of many privileges and rights, this court finds that the "catalogue of harms" to which Mr. Stone–Bey was subjected during his period of disciplinary confinement are not significantly more restrictive than those found in the general population. Thus, under *Sandin,* Mr. Stone–Bey's confinement in disciplinary segregation did not present the type of "atypical and significant hardship" in which a state might conceivably create a liberty interest.

### B. LIBERTY INTEREST UNDER THE DUE PROCESS CLAUSE ITSELF

The analysis does not end here. Mr. Stone–Bey also argues that he had a protected liberty interest in the CAB hearing arising under the Due Process Clause itself because his placement in disciplinary segregation may ultimately affect the duration of

his sentence. First, Stone–Bey states that under Indiana Administrative Code § 1.1–4–1, a prisoner cannot be considered for clemency if the prisoner does not have a clear record for the period immediately preceding consideration for clemency. Thus, he argues that his placement in disciplinary segregation will ultimately affect his sentence because it denied him the opportunity to petition for consideration of clemency.

■ Mr. Stone–Bey further alleges that his sanction will affect his chances for parole in the future, also affecting the duration of his sentence. He argues that a prisoner's record and conduct are among the considerations used to determine a prisoner's parole eligibility. Ind.Code § 11–13–3–3. He claims that although the parole board is not required to deny parole based upon his placement in disciplinary segregation, it is clear that, based upon our society's concern about crime, the parole board will more than likely deny him the opportunity to be released on parole because of his time spent in disciplinary confinement. Thus, he contends that the CAB's decision affects the duration of his sentence, creating for him a protected liberty interest in remaining in the general prison population.

The court will first address his parole claim. The Supreme Court of the United States in *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, held:

> There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence. The natural desire of an individual to be released is indistinguishable from the initial resistance to being confined. But the conviction, with all its procedural safeguards, has extinguished that liberty right: '[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty.' (Citation omitted)

*Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979). In *Sandin*, the Supreme Court addressed almost the exact issue Mr. Stone–Bey raises here; that his sentence will more than likely

be affected because his chances for parole are diminished due to his disciplinary confinement. The Supreme Court found that nothing in Hawaii's code required the parole board to deny parole in the face of a misconduct record or to grant parole in its absence even though misconduct is a consideration to be weighed in reaching a decision. *Sandin,* — U.S. at ——, 115 S.Ct. at 2302. This finding almost mirrors Mr. Stone–Bey's argument. Stone–Bey readily admits that, "the parole board is not required to deny parole based upon the finding of a prisoner being placed in disciplinary segregation."[8]

In *Sandin*, the Supreme Court held that "the decision to release a prisoner rests on a myriad of considerations ... [t]he chance that a finding of misconduct will alter the balance is simply too attenuated to invoke the procedural guarantees of the Due Process Clause." *Sandin,* at ——, 115 S.Ct. at 2302. This court, following the Supreme Court's holding, finds that Mr. Stone–Bey has no liberty interest under the Due Process Clause on this claim.

■ As for Mr. Stone–Bey's claim that his inability to file a petition for consideration of clemency will ultimately affect the duration of his sentence, the court looks again to the Supreme Court of the United States for guidance. In *Connecticut Board of Pardons v. Dumschat,* the Supreme Court held that:

> A decision whether to commute a long-term sentence generally depends not simply on objective factfinding, but also on purely subjective evaluations and on predictions of future behavior by those entrusted with the decision. A commutation decision therefore shares some of the characteristics of a decision whether to grant parole ... In terms of the Due Process Clause, [an inmate]'s expectation that a lawfully imposed sentence will be commuted or that he will be pardoned is no more substantial that an inmate's expectation, for example, that he will not be transferred to another prison, "it is simply a unilateral hope."
>
> A constitutional entitlement cannot "be created—as if by estoppel—merely be-

---

**8.** See Plaintiff's Brief in Response to Court Order of September 22, 1995, p. 8.

1236

cause a wholly and expressly discretionary state privilege has been granted generously in the past." No matter how frequently a particular form of clemency has been granted, the statistical probabilities standing alone generate no constitutional protections; a contrary conclusion would trivialize the Constitution. (Citations omitted) *Connecticut Board of Pardons v. Dumschat,* 452 U.S. 458, 464, 101 S.Ct. 2460, 2464, 69 L.Ed.2d 158 (1981).

In this case, Mr. Stone–Bey admits that no petitioner is certain that clemency will be granted. However, he argues that he was confident of his chances for clemency because of his exceptional efforts toward rehabilitation. This argument alone does not persuade this court that Mr. Stone–Bey has a liberty interest under the Due Process Clause because he was denied the chance to file a petition for clemency. Based upon the holding in *Connecticut Board of Pardons, supra,* this court finds that the Due Process Clause itself did not create a liberty interest for Mr. Stone–Bey when the CAB sanctioned him to disciplinary segregation, denying him of a chance to file for clemency.

Therefore, this court finds that neither the law of the State of Indiana, nor the Due Process Clause itself, afforded Mr. Stone–Bey a protected liberty interest in remaining in the general prison population. Thus, applying the holdings of *Sandin,* Mr. Stone–Bey was not entitled to receive the procedural protections set forth in *Wolff* in his CAB hearing. The confinement to which he was subjected as a result of his CAB hearing was within the range of confinement to be normally expected for an inmate serving a life sentence, and any claims that Mr. Stone–Bey has raised under the Due Process Clause of the Fourteenth Amendment are hereby **DISMISSED.**

### VII. CONCLUSION

In conclusion, there are no genuine issues of material fact regarding Mr. Stone–Bey's Fourteenth Amendment Due Process claims, and the defendant is entitled to judgment as a matter of law on each of these claims. Therefore, the defendant's renewed motion for summary judgment is hereby **GRANTED**

against the plaintiff and in favor of the defendant. Each party will bear its own costs. The Clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**