Louis BONNER, Petitioner,

v.

Al C. PARKE, Superintendent, and Indiana Attorney General, Respondents.

No. 3:95–CV–0851 AS.

United States District Court, N.D. Indiana, South Bend Division.

Feb. 27, 1996.

---

**1266**

Louis Bonner, Michigan City, IN, Pro Se.

Susan B. Klineman, Department of Correction, Legal Services Division, Indianapolis, IN, for respondents.

### MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

This is a challenge under 28 U.S.C. § 2254 to a prison Conduct Adjustment Board ("CAB") proceeding by *pro se* prisoner Louis Bonner. Mr. Bonner is currently an inmate at the Indiana State Prison ("ISP") in Michigan City, Indiana, and filed his petition for writ of *habeas corpus* on October 19, 1995.

### I. BACKGROUND

A conduct report written on June 12, 1995, by Doug Ayres, the internal affairs investigator at ISP, charged Mr. Bonner with fighting where injury occurs. According to the report of conduct, Mr. Ayres initiated an investigation into allegations that offender Michael Broyles and Mr. Bonner were involved in a fight on June 9, 1995. According to Ayres' report, Mr. Broyles struck Mr. Bonner with a pipe as Bonner left the electric shop, resulting in Bonner sustaining an injury to the back of his neck. Mr. Bonner's statement indicated that Mr. Broyles acted without provocation and warning. Mr. Broyles' statement indicates facts to the contrary. He admitted striking Mr. Bonner, but claimed to do so only in the "heat of the incident" after confronting and arguing with Bonner. Another offender, Mr. Stahl, also

witnessed the incident, and Ayres summarized Stahl's statement as follows:

> The offender stated he saw the whole incident. This witness stated, offender Broyles confronted offender Bonner about stuff from the desk [in the electric shop]. They had a verbal altercation and Bonner left the office. He returned a short time later, asking for a light, knowing no one in the office smoked. While in the office, offender Bonner threatened to shank offender Broyles. After another short verbal altercation, offender Bonner started out of the office, past a tool box. When he reached the tool box, he opened the drawer, which contained a 8″ screw driver. Offender Bonner was turning toward offender Broyles with the screw driver held in a threatening manner. At that time, offender Broyles struck him with pipe.

See Respondents' Memorandum in Support of Response to Order to Show Cause, Ex. A.

Also on June 12, Mr. Bonner received a copy of the report of conduct and his notice of a disciplinary hearing to be held on June 13, 1995. For the hearing, Mr. Bonner requested and was provided a lay advocate, and requested that offender Stahl be made available to testify. The hearing was held before a hearing officer on June 16, 1995. Based upon the conduct report, the testimony of the offender and Offender Stahl's statement, the hearing officer found Mr. Bonner guilty of fighting where injury occurs. As a result, the hearing officer disciplined Mr. Bonner by sanctioning him with placement into disciplinary segregation for three (3) years.

Mr. Bonner appealed the hearing officer's decision to Al Parke, Superintendent of ISP, on June 19, 1995. On July 19, 1995, Mr. Parke denied Mr. Bonner's appeal, finding that Bonner had not provided substantial evidence to establish that the hearing officer's decision was incorrect. Mr. Bonner subsequently appealed his conviction and sanction to the Disciplinary Review Manager of Adult Operations of the Indiana Department of Correction. On August 14, 1995, the Disciplinary Review Manager found that there was no evidence of procedural or due process error in the hearing and that the sanctions imposed were well within the

guidelines of the Disciplinary Code for Adult Offenders. Thus, this appeal was denied.

Mr. Bonner filed his petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 on October 19, 1995. In his petition, Mr. Bonner claims that he was denied due process under the Fourteenth Amendment to the United States Constitution. The respondents filed their response to order to show cause on January 11, 1996, demonstrating the necessary compliance with *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir.1982). In their response, the respondents argue first that no protected liberty interest was at stake in the CAB hearing. In the alternative, the respondents argue that should the court find that a liberty interest does indeed exist in this case, Mr. Bonner was not deprived of due process when he was found guilty by the hearing officer. Mr. Bonner has failed to file a traverse in this action.

## II. ISSUES

The issues now properly before the court are the following: (1) under the Fourteenth Amendment to the United States Constitution, should this court recognize that Mr. Bonner has a state-created liberty interest in remaining in the general population of the Indiana State Prison by virtue of his sanction placing him in disciplinary segregation for three years as a result of his CAB conviction; and, if such a liberty interest does exist; (2) did Mr. Bonner receive the due process protections required by the Supreme Court of the United States in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), in his prison disciplinary proceeding.

## III. DISCUSSION

■ There are some basics involved in this court's collateral review of CAB proceedings under § 2254. First, this court must examine this record for alleged constitutional errors. *See Bell v. Duckworth*, 861 F.2d 169 (7th Cir.1988), *cert. denied*, 489 U.S. 1088, 109 S.Ct. 1552, 103 L.Ed.2d 855 (1989). Secondly, this court does not sit as a trier de

novo in these prison disciplinary proceedings and does not sit as court of general common law review. *Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir.1988); *Hanrahan v. Lane*, 747 F.2d 1137, 1140 (7th Cir.1984). Third, this court does not sit merely to determine questions of state law. *Estelle v. McGuire*, 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Kraushaar v. Flanigan*, 45 F.3d 1040 (7th Cir.1995).

■ The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV. Thus, when a petitioner brings an action under § 2254 for a violation of procedural due process, he must establish that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990) (citing *Parratt v. Taylor*, 451 U.S. 527, 537, 101 S.Ct. 1908, 1914, 68 L.Ed.2d 420 (1981)). A liberty interest may arise from state law or from the Due Process Clause itself. *Pardo v. Hosier*, 946 F.2d 1278, 1281 (7th Cir.1991). In this case, although Mr. Bonner's claims are not the model of clarity, the court construes his argument as one claiming that he has a state-created liberty interest in remaining in the general prison population by virtue of his placement into disciplinary segregation for three (3) years by the CAB, and that the hearing officer denied him the due process protections to which he is entitled under the *Wolff*.[1] Thus, Mr. Bonner's claims fall squarely within the realm of the recent decision of the Supreme Court of the United States in *Sandin v. Conner*, —— U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

■ Prior to the Supreme Court's decision in *Sandin*, an inmate retained a liberty interest in remaining free from confinement in segregation where the state created a protected liberty interest through the use of "language of an unmistakenly mandatory character" in its prison administrative regu-

---

1. Mr. Bonner was sanctioned only with disciplinary segregation. He lost no good time credits, nor was he demoted a credit time-earning class. Thus, the court does not interpret Mr. Bonner's argument as raising any claim that he has a liberty interest arising under the Due Process Clause itself under *Sandin*.

lations. *See Hewitt v. Helms,* 459 U.S. 460, 471–72, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983). Thus, before *Sandin,* when a state's prison regulations created a liberty interest in remaining free from disciplinary segregation, an inmate was entitled to the procedural due process protections set forth in *Wolff* prior to his placement into disciplinary segregation. *See Rasheed–Bey v. Duckworth,* 969 F.2d 357, 361 (7th Cir.1992). However, in *Sandin,* the Supreme Court held that state prison regulations will now create enforceable liberty interests only in limited situations. *Sandin,* —— U.S. at ——, 115 S.Ct. at 2300; *Whitford v. Boglino,* 63 F.3d 527, 531 (7th Cir.1995).[2] In *Sandin,* the Supreme Court held:

> The time has come to return to the due process principles we believe were correctly established and applied in *Wolff* and *Meachum.* Following *Wolff,* we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. *But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.* (Citations omitted) (Emphasis added)

*Sandin,* —— U.S. at ——, 115 S.Ct. at 2300. Applying this holding to the facts in *Sandin,* the Supreme Court concluded that sanctioning a prisoner to 30 days in disciplinary segregation "did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Id.* at ——, 115 S.Ct. at 2301.

### IV. POST–SANDIN ANALYSIS

As this court pointed out in its memorandum and order in *McKinney v. Hanks, supra,* the task of determining where the new fences are now located in the spectrum of prison disciplinary cases dealing with the determination of protected liberty interests for inmates will fall to the United States district judges and United States magistrate judges. Federal courts around the United States have been testing the judicial waters in an attempt to grasp the meaning of the Supreme Court's holding in *Sandin.* This court has already published opinions dealing with some of the dimensions of the Supreme Court's important decision in *Sandin: See Stone–Bey v. Barnes,* 913 F.Supp. 1226 (N.D.Ind.1996); *McKinney v. Hanks,* 911 F.Supp. 359 (N.D.Ind.1995); *Thomas v. Newkirk,* 905 F.Supp. 580 (N.D.Ind.1995); *Stone–Bey v. Swihart,* 898 F.Supp. 1287 (N.D.Ind.1995); and *Taifa v. Bayh,* 1995 WL 646300 (7th Cir. Sept. 26, 1995). With the foregoing in mind, the court will now address Mr. Bonner's argument that the law of the State of Indiana creates for him a liberty interest in remaining in the general prison population.

### A. LIBERTY INTEREST CREATED BY STATE LAW

The court interprets Mr. Bonner as claiming that the CAB's decision to place him into disciplinary segregation for three (3) years created for him a liberty interest under state law. Under such a claim, the court must first determine whether the amount of time for which Mr. Bonner was placed into disciplinary segregation constituted a penalty which falls outside the expected scope of his sentence. Second, the court must determine whether the conditions of Mr. Bonner's confinement in disciplinary segregation are significantly more restrictive than those found in the general prison population. If the court finds that Mr. Bonner's sanction fell outside the expected scope of his sentence or that the conditions he faces in disciplinary segregation are significantly more onerous that those found in the general prison population, then under *Sandin,* the court will find Mr. Bonner's sanction imposed an atypical

---

2. Though the relevant incidents in this case all occurred prior to the Supreme Court's decision in *Sandin,* courts have held that *Sandin* applies retroactively to the present case since the Supreme Court applied the rule announced in *Sandin* to the parties in that case. *Samuels v. Mock-ry,* 77 F.3d 34 (2d Cir.1996); *Dominique v. Weld,* 73 F.3d 1156, 1160 (1st Cir.1996); *Mujahid v. Meyer,* 59 F.3d 931 (9th Cir.1995). *See also Rivers v. Roadway Express, Inc.,* —— U.S. ——, ——, 114 S.Ct. 1510, 1519, 128 L.Ed.2d 274 (1994).

and significant hardship, thus creating for him a liberty interest in remaining in the general prison population. The analysis would then shift to the determination as to whether Mr. Bonner received the due process protections guaranteed to inmates in the prison disciplinary context under *Wolff.*

■ The court will first address the conditions prong of this test—whether the conditions that Mr. Bonner faces in disciplinary segregation present a significant and atypical hardship for him in comparison to the general prison population. When making such a determination, the court must view the conditions in relation to the particular prison institution where the claimed deprivation exists. Since this case deals with the conditions of the ISP, the court directs the parties' attention to this court's memorandum and order in *Stone–Bey v. Barnes,* 913 F.Supp. 1226 (N.D.Ind.1996). In *Stone–Bey,* the plaintiff challenged his placement into disciplinary segregation at the ISP for one year, claiming that the conditions in the segregated cells were oppressive. This court held that the plaintiff was not entitled to a liberty interest in remaining in the general prison population when sanctioned with disciplinary segregation, finding that (1) the placement of an inmate into disciplinary segregation for one year did not exceed the scope of an inmate's sentence, and (2) that the conditions of the disciplinary segregation unit at the ISP are not significantly more onerous than the general prison population, and, thus, such punishment does not create an "atypical and significant hardship" under *Sandin. Id.* at 1232–35.

■ Mr. Bonner is an inmate currently incarcerated at the Indiana State Prison. Like the plaintiff in *Stone–Bey,* Mr. Bonner was placed into the disciplinary segregation unit at the ISP. Thus, the court takes judicial notice of the conditions of the disciplinary segregation unit of the ISP as they were alleged by Mr. Stone–Bey. *See id.* at 1231–32. Based upon this court's analysis of the conditions in disciplinary segregation at the ISP in *Stone–Bey,* this court now finds that the conditions Mr. Bonner faces in his confinement in disciplinary segregation are not significantly more onerous than those found in the general prison population at the ISP.

However the analysis does not end here, and it is at this point that the issues become very close indeed. This court must determine if an inmate's placement into disciplinary segregation for a term of three (3) years falls within the scope of an inmate's sentence, or whether it creates an atypical and significant hardship for an inmate in comparison to life within the general prison population at the ISP. In *Stone–Bey,* the plaintiff was sanctioned with only one (1) year in disciplinary segregation while Mr. Bonner has been sanctioned to a term three times as long. As noted above, many of the United States district courts have been struggling with the issue of how far the decision in *Sandin* should be extended.[3]

---

3. See the following cases where courts have held that inmates do not have a protected liberty interest in remaining in the general prison population: *Smith v. District of Columbia,* 1996 WL 61775 (D.D.C. Jan. 26, 1996) (no liberty interest created when inmate placed into segregation for three months); *Tulloch v. Coughlin,* 1995 WL 780970 (W.D.N.Y. Dec. 22, 1995) (no liberty interest is implicated for an inmate placed in segregation for term of 180 days); *Carter v. Carriero,* 905 F.Supp. 99 (W.D.N.Y.1995) (a sanction to 270 days of disciplinary confinement was not an atypical or significant hardship under *Sandin*); *Ishaaq v. Compton,* 900 F.Supp. 935 (W.D.Tenn. 1995) (mere confinement to segregation, whether punitive or administrative, does not constitute an atypical and significant hardship for an inmate and thus cannot amount to a deprivation of a liberty interest); and *Delaney v. Selsky,* 899 F.Supp. 923 (N.D.N.Y.1995) (stating in dictum that 197 days in disciplinary segregation does not create a liberty interest after *Sandin* ). Within the Seventh Circuit, courts have held that a sanction of 34 days, *Williams v. Ramos,* 71 F.3d 1246 (7th Cir.1995), and 31 days, *Winfrey v. Ultsch,* 895 F.Supp. 229 (E.D.Wis.1995), in disciplinary segregation do not create liberty interests under *Sandin.* Other cases in the Seventh Circuit which have reached such a result include *Whittmore v. Washington,* 1995 WL 646391 (N.D.Ill. Oct. 23, 1995) (30 days); *Riggins v. Cooper,* 1995 WL 771413 (N.D.Ill. Aug. 23, 1995) (15 days); *Kirsch v. Franklin,* 897 F.Supp. 1173 (E.D.Wis. 1995) (13 days); and *Leslie v. Doyle,* 896 F.Supp. 771 (N.D.Ill.1995) (15 days). But, see also *Brooks v. DiFasi,* 1995 WL 780976 (W.D.N.Y. Dec. 29, 1995) (holding that a sanction of 376 days in disciplinary segregation is an "atypical and significant hardship" under *Sandin* based upon the length of confinement and pre-*Sandin* case law).

Prior to the decision in *Sandin*, the United States Court of Appeals for the Seventh Circuit had held that before a term of one-year in segregation may be imposed by a CAB, federal due process protections must be followed, as such a penalty falls outside the expected scope of an inmate's sentence. *Rowe v. DeBruyn*, 17 F.3d 1047, 1053 (7th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 508, 130 L.Ed.2d 416 (1994). However, the court is compelled to stress that *Rowe* was a decision reached before the advent of *Sandin*. The Seventh Circuit addressed this concern in *Whitford, supra*, stating "the *Sandin* Court's observation that punishment for disciplinary violations is within the expected scope of a prison sentence calls *Rowe*'s reasoning into question." *Whitford*, 63 F.3d at 533. In *Sandin*, the Supreme Court addressed a similar point, stating:

> Although Conner points to dicta in cases implying that solitary confinement automatically triggers due process protection, this Court has not had the opportunity to address in an argued case the question whether disciplinary confinement of inmates itself implicates constitutional liberty interests. We hold that Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which the state might conceivably create a liberty interest. (Citations omitted)

*Sandin*, —— U.S. at ——, 115 S.Ct. at 2301.

In *Sandin*, based upon a comparison between inmates inside and outside disciplinary segregation, the Court found that the state's action in placing inmate Conner in disciplinary segregation for 30 days did not work a major disruption in his environment. *Id.* The holding in *Sandin* has created much uncertainty on the issue of what amount of punishment will amount to a "major disruption" in a prisoner's environment. The *San-*

*din* Court did hold that discipline by prison officials in response to a wide-range of misconduct falls within the expected scope of the inmate's sentence. *Id.*

Many courts have applied *Sandin* merely to dismiss cases in which prisoners have received 30 days or less in disciplinary segregation, finding that such punishment does not create an "atypical and significant hardship." Other courts, including this court, have not limited the *Sandin* holding to cases where the discipline imposed on an inmate results in 30 days or less in disciplinary segregation. *See Stone–Bey v. Barnes, supra* (holding that one year in disciplinary segregation was not outside the scope of an inmate's sentence and not an atypical and significant hardship on an inmate). The Seventh Circuit has held as a matter of law that even if prisoners are entitled to due process protections prior to imposing extreme terms of segregation, six months was not an extreme term. *Whitford v. Boglino*, 63 F.3d 527, 533 (7th Cir.1995). One district court has went so far as to declare that the length of an inmate's confinement is of little import to the determination as to whether an inmate's placement into disciplinary segregation creates an atypical and significant hardship under *Sandin*. *See Tulloch v. Coughlin*, 1995 WL 780970 (W.D.N.Y. Dec. 22, 1995).

Based upon the language of *Sandin*, the Seventh Circuit's own questioning of *Rowe*, the Seventh Circuit's finding in *Whitford*, and this court's decision and reasoning in *Stone–Bey*, this court finds that Mr. Bonner's placement in disciplinary segregation for three years does not constitute an extreme term of segregation and, by itself, does not create an atypical and significant hardship in relation to the ordinary incidents of prison life. Therefore, under *Sandin*, Mr. Bonner has no liberty interest in his CAB proceeding.[4]

---

4. It is certainly a part of reality that the last word has not yet been written on *Sandin*, and this court is not so egocentric as to think that it will in any way be involved in the writing of that last word. However, this court does believe that some rudimentary "fence building" will be required in the very near future. If the trend of the courts will be to hold that an inmate will be entitled to a liberty interest in his CAB hearing only when disciplined with sanctions that will "inevitably affect" the duration of an inmate's sentence, then prison officials may find it appealing to forego disciplining inmates with sanctions that do "inevitably affect" an inmate's sentence, such as the deprivation of earned "good time" credits or the demotion of a credit time-earning class, in order to do an "end run" around providing the inmate with the due process.

## B. DUE PROCESS PROTECTIONS

Even assuming arguendo that Mr. Bonner is entitled to a liberty interest under *Sandin,* he was not deprived of the due process protections required by the Fourteenth Amendment in his CAB hearing. Due process entitles an inmate to receive the following process in the prison disciplinary context:

> (1) advance (at least 24 hours before hearing) notice of the claimed violation; (2) the opportunity to be heard before an impartial decision maker; (3) the opportunity to call witnesses and present documentary evidence (when consistent with institutional safety); and (4) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

*Rasheed–Bey v. Duckworth,* 969 F.2d 357, 361 (7th Cir.1992) (citing *Superintendent, Mass. Corr. Institution at Walpole v. Hill,* 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985); *Wolff v. McDonnell,* 418 U.S. 539, 563–67, 94 S.Ct. 2963, 2978–80, 41 L.Ed.2d 935 (1974)).

First, the "Notice of Disciplinary Hearing" indicates that Mr. Bonner received notice of the June 16, 1995 hearing on June 12, 1995; clearly more than the required twenty-four (24) hours notice required. Second, Mr. Bonner did appear at the hearing before the hearing officer on June 16. Third, Mr. Bonner was provided the opportunity to call witnesses and present documentary evidence, as evidenced by the hearing officer's reliance on offender Stahl's statements. Fourth, the hearing officer listed the evidence it relied upon in reaching its decision to find Mr. Bonner guilty of the charged violation. Thus, the requirements as set out in *Wolff, supra,* appear to have been satisfied.

Further, due process requires a CAB's findings be supported by "some evidence" in the record. *Superintendent,* 472 U.S. at 454, 105 S.Ct. at 2773. The Report of Conduct and the statement of Mr. Stahl, the eyewitness, clearly establish that the CAB's decision was supported by "some evidence". Thus, for the foregoing reasons, the court finds that the CAB's decision did not violate Mr. Bonner's due process rights under the standards of *Wolff* or *Superintendent.*

## V. CONCLUSION

The court, for the foregoing reasons, holds that Mr. Bonner's petition pursuant to 28 U.S.C. § 2254 states no claim upon which relief can be granted. Therefore, this petition is hereby **DENIED** and this case is now **DISMISSED.**

**IT IS SO ORDERED.**

---

The slippery slope of such an analysis is that prison officials may find it in their interest to sanction inmates with only disciplinary segregation, since an inmate who is sanctioned only with such segregation will not be entitled to any due process protections. In such a scenario, an inmate could be placed into disciplinary segregation almost at the whim of prison officials, and CAB hearings could then become a relic, as prison officials would no longer be required to provide that inmate with the limited due process protections of *Wolff* when the inmate violates a prison regulation. This court wholeheartedly agrees with the line of cases that have accorded prison officials wide latitude and deference in executing policies and practices that in their judgment are necessary to preserve internal order, discipline and security. *See Pardo v. Hosier,* 946 F.2d at 1280. However, this court does not believe that institutional discretion is so absolute as to require the courts to substantially erode the protections of due process within the confines of the prison. Although this court today does find that three years in disciplinary segregation does not create a liberty interest, it does acknowledge that some upper boundary must be placed upon the *Sandin* holding to ensure that the protections of the Due Process Clause of the Fourteenth Amendment do not become extinct in the prison disciplinary context.