**Eddie L. HESTER, Petitioner,**

v.

**Daniel McBRIDE, Superintendent, Respondent.**

No. 3:96–CV–00858 AS.

United States District Court, N.D. Indiana, South Bend Division.

May 19, 1997.

cluded from this preliminary injunction finding of infringement.

Eddie L. Hester, Westville, IN, pro se.

Robert D. Bugher, Indianapolis, IN, for Daniel R. McBride.

Scott A. Gorman, pro se.

ALLEN SHARP, Chief Judge.

### MEMORANDUM AND ORDER

This is a challenge under 28 U.S.C. § 2254 to a prison Conduct Adjustment Board. ("CAB") proceeding by *pro se* petitioner Eddie Hester ("Hester"). Hester was at all times relevant to this petition, and is currently, housed at the Westville Correctional Facility ("WCF") in Westville, Indiana. Hester filed his petition for writ of habeas corpus on November 20, 1996, challenging a conviction in a prison disciplinary proceeding that occurred while he was incarcerated at the WCF, styled by the Indiana Department of Correction as "WCC # 96–07–0327."

### I. FACTS AND PROCEDURAL HISTORY

On July 10, 1996, Investigator Michael H. Spears entered a report of conduct and a report of investigation against Hester, charging him with a violation of Adult Disciplinary Policy Procedures ("ADPP") code section 102, "Committing battery upon another person, with or without a weapon." Specifically, the report of investigation reads as follows:

On June 19, 1996, this Office was assigned to investigate an alleged battery that occurred on 6–18–96 at approximately 3:45 p.m. on P–2 Dorm. Offender Wade Martin # 943377 alleged to P–2 officers that he was attacked by Offender Eddie Hester # 884394.

Staff questioned Offender Hester. He denied hitting Offender Martin. However, he admitted they had a few words and Martin left the room.

Staff questioned Offender Martin. He stated he and Hester had a few words and Hester hit him in the head several times. He laid on the floor and covered his head while Hester hit and stomped him. The other roommates had to pull Hester off of him.

Offender Hester was transferred to E–1 Dorm. Offender Martin was offered medical treatment, but refused. He was scratched on his upper left arm about four (4) to five (5) inches long.

On June 26, 1996, Offender Witness # 1, stated on 6–18–96 at 3:45 p.m., Mario Borroel # 931672 and Eddie Hester were in their room. Hester said Wade had snitched on him (Hester). Hester said he was going to beat Wade's ass. When Wade Martin came in the room carrying his coffee in one hand and a cigarette in the other, Eddie took off his watch, turned around and hit Wade in the cheek. Wade went down to the floor and curled up into a fetal position. Eddie hit Wade three (3) or more times and then began kicking him. Mario Borroel and Jose Torres stepped in and pulled Eddie off. Wade was hollering he didn't want to fight.

Offender Witness # 1 further stated that this all started several days before when Eddie saw Mario Borroel came in and

changed his underwear and leave the room with his dirty ones. When Mario Borroel returned without them, Eddie assumed Mario was a fag. Eddie told J. Torres and W. Martin. Later Wade Martin told Mario Borreal [sic] what Eddie had said. Mario asked Eddie about what was said. Eddie knew Wade told Mario.

On July 8, 1996, Offender Wade Martin # 943377 was interviewed. He stated, Eddie had said Mario was having sexual intercourse with other offenders. He told Mario what Eddie had said. Mario said it was not true. Mario told Eddie what he (Martin) had told him.

On June 18, 1996[,] close to 4:00 p.m., he walked in the room, he had his cup and a cigarette. Eddie just started hitting him, and he went down to the floor and Eddie started kicking him. Jose Torres and Mario Borroel pulled Eddie off him. Eddie then threatened to kick his ass if he told. He never hit Eddie back.

On July 8, 1996[,] Offender Witness # 2 was interviewed. He stated that Eddie Hester told Wade Martin a lie about Mario getting up and changing his boxers in the middle of the night. Wade told Mario about what Eddie said. Mario went to Eddie and asked about it. Eddie got mad because Wade told ·Mario about what he (Eddie) said.

When Wade walked in the room carrying a cup of coffee, Eddie hit him numerous times. Eddie even kicked Wade, when he was down on the floor. Mario and Torres pulled Eddie off of Wade.

On July 8, 1996[,] Offender Eddie Hester # 884394 was interviewed. He denied hitting Offender Wade Martin. He even has witnesses, J. Torres and M. Borroel (roommates) to say when the 10–10 (fight) was called he was in his room and Martin was at the officer's station.

Both roommates gave statements to staff indicating Hester hit and kicked Martin in the room prior to the Officer calling on the radio.

Based on the staff reports, victim statement, and witnesses statements, Offender Eddie Hester # 884394 is being charged with a Conduct Report # 102, Committing Battery.

*See* Respondent's Return to Order to Show Cause, Ex. A3–A4.

Hester was provided a copy of the report of conduct on July 16, 1996, along with notice of a hearing on the report to be held before the Conduct Adjustment Board ("CAB") on July 18, 1996. In response to his notice of hearing, Hester pled not guilty, requesting the assistance of à lay advocate. Hester requested that inmate Jose Torres and Captain Evans be made available as witnesses for the hearing.

The hearing on Hester's conduct report occurred on July 30, 1996. During the hearing, Hester made a statement on his own behalf, denying that he committed the battery. The CAB also heard testimony from the witnesses called. After reviewing all of the evidence presented, the CAB found the petitioner guilty of the charge of battery, and provided the petitioner with a written explanation of its findings. The CAB's findings of fact and statement of evidence relied on were issued as follows:

> After reviewing the CR, witness statements, Report of Investigation, offender comments the CAB finds guilty based on the Report of Investigation in which the victim identified Hester as attacking him. And the two confidential witnesses also identified Hester as attacking and beating offender Wade.

*See* Respondent's Response to Order to Show Cause, Ex. A8. As a result of his conviction, the CAB sanctioned Hester by depriving him of 365 days earned credit time and by demoting him from credit time earning class II to credit class III.

Subsequently, on August 9, 1996, Mr. Hester appealed the CAB's decision to the prison superintendent, respondent Daniel McBride. In his appeal, Hester argued that he was not guilty of the battery and that the witnesses called by the prison lied. On September 17, 1996, McBride denied the appeal, finding that there was sufficient evidence to support the CAB's decision. On September 26, 1996, Hester appealed his conviction to the Indiana Department of Correction Adult Disciplinary Review Manager, L. A. VanNatta. In that

appeal, Hester presented five grounds for review: (1) that the CAB's decision was based upon insufficient evidence; (2) that his due process rights were violated when he was not provided with copies of witness statements presented in the hearing; (3) that he was never provided with other statements as discovery; (4) that he was not provided with a copy of the incident report given to the shift commander; and (5) that inmate Torres's statement given to the investigator was perjured. On December 19, 1996, Ms. VanNatta denied that appeal, finding that there was no evidence of procedural or due process error in the CAB proceeding.

## II. ARGUMENTS

Hester turned his attentions to federal court by filing his petition for *writ of habeas corpus* in this court on November 20, 1996. In his petition, Hester raises six separate due process claims. First, he claims that the CAB's decision was based upon insufficient evidence. Second, he alleges that the investigator violated his rights by failing to use a polygraph test on the witnesses. Third, he contends that the prison failed to provide him with a copy of witness statements before the hearing. Fourth, he submits that he was denied equal protection because another inmate convicted of battery received less severe sanctions. Fifth, the petitioner argues that the CAB hearing was not held with the time limits set by the ADPP. Finally, sixth, he claims that his lay advocate was ineffective because he did not discover that inmate Torres' witness statements were contradictory. Thus, Hester requests that this court grant his petition for federal habeas relief.

The respondent filed his return to order to show cause on March 19, 1997, demonstrating the necessary compliance with *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir.1982). In his response, the respondent argues that Hester's due process rights were not violated by the CAB in the July 30, 1996, hearing. On April 3, 1997, Hester, by his lay advocate Scott Gorman, filed his traverse in this matter, in which he countered the arguments presented by the respondent and restated the contentions raised in his petition.

## III. STANDARDS OF REVIEW

■ A claim under 28 U.S.C. § 2254 requires the federal habeas court to ensure that the state criminal conviction was not achieved at the expense of the petitioner's constitutional rights. Justice Stewart, speaking for the Supreme Court of the United States in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), described the role of the federal district courts in habeas proceedings:

> A judgment by a state appellate court rejecting a challenge to evidentiary sufficiency is of course entitled to deference by the federal courts, as is any judgment affirming a criminal conviction. But Congress in § 2254 has selected the federal district courts as precisely the forums that are responsible for determining whether state convictions have been secured in accord with federal constitutional law. The federal habeas corpus statute presumes the norm of a fair trial in the state court and adequate state postconviction remedies to redress possible error. What it does not presume is that these state proceedings will always be without error in the constitutional sense. The duty of a federal habeas corpus court to appraise a claim that constitutional error did occur—reflecting as it does the belief that the "finality" of a deprivation of liberty through the invocation of the criminal sanction is simply not to be achieved at the expense of a constitutional right-is not one that can be so lightly abjured.

*Id.* at 323, 99 S.Ct. at 2791 (citation omitted).

The Congress of the United States has recently codified the holdings of *Jackson* and its progeny through the AEDPA, which amended 28 U.S.C. § 2254, in relevant part, as follows:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the

presumption of correctness by clear and convincing evidence.

*See* 28 U.S.C. § 2254(e)(1).

■ When Congress passed the AEDPA, the standards of review that the court must apply to the merits of a petition for writ of habeas corpus under § 2254 also changed significantly. Section 2254 was further amended in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*See* 28 U.S.C. § 2254(d). In *Lindh v. Murphy*, 96 F.3d 856 (7th Cir.1996),[1] the Seventh Circuit, speaking through Circuit Judge Easterbrook, held that § 2254(d), as amended, should be applied to petitions pending when the AEDPA was enacted. The Seventh Circuit found that "[t]he 1996 Act does not 'impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.'" *Id.* at 867 (quoting *Landgraf v. USI Film Products*, 511 U.S. 244, 280, 114 S.Ct. 1483, 1505, 128 L.Ed.2d 229 (1994)); *see also Burris v. Parke*, 948 F.Supp. 1310, 1319–20 (N.D.Ind. 1996).

■ In *Sweeney v. Parke*, 113 F.3d 716 (7th Cir.1997), the Seventh Circuit suggested that the amended habeas statute applies to determinations made by administrative bodies. *See also Evans v. McBride*, 94 F.3d

1062, 1065 (7th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 991, 136 L.Ed.2d 872 (1997). Thus, following *Evans* and *Sweeney,* this court shall apply the amended standards of the AEDPA on Hester's challenge to his prison disciplinary conviction.

## IV. DUE PROCESS CLAIMS

The petitioner raises a variety of due process claims in this petition. The respondent submits that all of Hester's due process claims fail on their merits. Any discussion on alleged violations of due process and the creation of protected liberty interests in the prison disciplinary context must first begin with an analysis of the recent decision by the Supreme Court of the United States in *Sandin v. Conner,* 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). This court has already published several opinions dealing with some of the dimensions of the Supreme Court's important decision in *Sandin: See Bonner v. Parke,* 918 F.Supp. 1264 (N.D.Ind. 1996); *Stone–Bey v. Barnes,* 913 F.Supp. 1226 (N.D.Ind.1996); *McKinney v. Hanks,* 911 F.Supp. 359 (N.D.Ind.1995); *Thomas v. Newkirk,* 905 F.Supp. 580, (N.D.Ind.1995); *Stone–Bey v. Swihart,* 898 F.Supp. 1287 (N.D.Ind.1995).

In *Sandin,* the Supreme Court held:

> The time has come to return to the due process principles we believe were correctly established and applied in *Wolff and Meachum [v. Fano,* 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976)] . Following *Wolff,* we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. *But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary*

1. The court notes that on January 10, 1997, a petition for writ of certiorari was granted in *Lindh* on the issue of the retroactivity of § 2254(d). Subsequently, on April 14, 1997, the Supreme Court of the United States held oral argument on this important issue. However, while the decision of *Lindh* is debated by the Supreme Court of the United States, the rule of law set forth by the Seventh Circuit in *Lindh* is still the law applicable in this circuit and must be applied by this court when reviewing this petition.

*incidents of prison* life. (Citations omitted) (Emphasis added)

*Sandin,* 515 U.S. at 483–84, 115 S.Ct. at 2300.

■ The Court also held in *Sandin* that a liberty interest is present where action of the state will "inevitably affect" the duration of the inmate's sentence. *Id.* at 485–87, 115 S.Ct. at 2301–02. In this case, Hester was sanctioned with a deprivation of 365 days of earned credit time and with a demotion in credit time earning class from a Class II to a Class III. Thus, Hester's loss of earned credit time creates a liberty interest that cannot be deprived without due process. *Id.* Because a liberty interest is present, the court must inquire whether these prison officials have sufficiently afforded Hester the due process protections required under the Due Process Clause in his prison disciplinary proceeding.

■ The requirements imposed by the Due Process Clause are flexible and variable dependent upon the particular situation being examined. *See Greenholtz v. Nebraska Penal Inmates,* 442 U.S. 1, 12, 99 S.Ct. 2100, 2106, 60 L.Ed.2d 668 (1979). In determining what is the process due an inmate in the prison context, the Supreme Court of the United States has held that "one cannot automatically apply procedural rules designed for free citizens in an open society ... to the very different situation presented by a disciplinary proceeding in a state prison." *Wolff,* 418 U.S. 539, 560, 94 S.Ct. 2963, 2977, 41 L.Ed.2d 935 (1974). "Prison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979). The United States Court of Appeals for the Seventh Circuit has held that the Due Process Clause entitles an inmate to receive:

(1) advance (at least 24 hours before hearing) notice of the claimed violation; (2) the opportunity to be heard before an impartial decision maker; (3) the opportunity to call witnesses and present documentary evidence (when consistent with institutional safety); and (4) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action.

*Rasheed–Bey v. Duckworth,* 969 F.2d 357, 361 (7th Cir.1992) (citing *Superintendent, Mass. Corr. Institution, Walpole v. Hill,* 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985) and *Wolff v. McDonnell,* 418 U.S. 539, 563–67, 94 S.Ct. 2963, 2978–80, 41 L.Ed.2d 935 (1974)).

■ First, in this case, the "Notice of Disciplinary Hearing" indicates that Hester received notice on July 16, 1996, that a hearing would be held on July 18, 1996—clearly more than the required 24 hours notice. Second, Hester did appear at the CAB hearing held on July 30, 1996. Third, the CAB listed the evidence it relied upon in reaching its decision to find Hester guilty of the charged violation. Fourth, Hester was provided the opportunity and, indeed, called two individuals-inmate Jose Torres and Captain Evans-as witnesses in the hearing. In addition, Hester does not allege that the CAB was biased against him. Thus, after reviewing the record in light of the standards set forth in *Rasheed–Bey,* it is this court's opinion that Hester received the requisite due process protections in his CAB hearing. Accordingly, having determined that Hester did, in fact, receive the minimum of process due him in the CAB hearing, the court will address his specific grounds for review presented in his petition.

## A. INSUFFICIENT EVIDENCE

■ The petitioner first argues that his CAB conviction was based upon insufficient evidence. Although the four factors set forth in *Rasheed–Bey, supra,* do not specify the quantum of evidence necessary to support a fact finder's decision, this question was resolved by the Supreme Court of the United States in *Superintendent, Mass. Corr. Institution, Walpole v. Hill, supra.* In *Superintendent,* the Court held that "the requirements of due process are satisfied if *some evidence* supports the decision by the disciplinary board." 472 U.S. at 455, 105 S.Ct. at 2774 (emphasis added). Thus, a district court's review of the CAB proceeding is very narrow. Accordingly, this court need only

inquire "whether there is evidence in the record that could support the conclusion reached by the [CAB]." *Id.* at 455–56, 105 S.Ct. at 2774. However, while due process only requires that "some evidence" exists, the evidence that is relied upon by a disciplinary board must present "sufficient indicia of reliability." *Meeks v. McBride,* 81 F.3d 717, 720 (7th Cir.1996). In addition, this court is not to reweigh the evidence presented to the CAB *de novo. See Viens v. Daniels,* 871 F.2d 1328 (7th Cir.1989).

In this case, Investigator Spears performed an in-depth investigation into the circumstances surrounding the incident which formed the basis of Hester's conviction. During that investigation, Investigator Spears gathered many statements from witnesses to the incident. In its decision, the CAB relied upon Investigator Spears' report of conduct and report of investigation. In addition, witness statements were presented and testimony was heard from other witnesses. Further, the CAB also heard Hester's own testimony before a decision was rendered.

The petitioner argues that the evidence was insufficient because he presented a witness statement which disputed the victim's version of the events. In addition, Hester contends that other witness statements that the CAB relied upon were vague and that there was no medical evidence presented to establish the battery. However, after reviewing the record in its totality, including the CAB's findings of fact, this court is convinced that the CAB's decision was supported by reliable evidence which clearly amounts to "some evidence" under *Superintendent* and *Meeks.* Therefore, the court must dismiss the petitioner's claim that the evidence presented to the CAB was insufficient.

### B. POLYGRAPH EXAMINATIONS OF WITNESSES

The petitioner also contends that his due process rights were violated because the investigator did not use a polygraph examination on witnesses. The respondent argues that the petitioner received the process to which he was due in the CAB hearing, and

submits that the petitioner cites to no state or federal law in support of his contention that a polygraph examination of the witnesses was required.

In prison disciplinary hearings, petitioners are afforded the right to call and present witnesses and documentary evidence. *See Wolff,* 418 U.S. at 563–67, 94 S.Ct. at 2978–80. However, this right is limited. Although polygraph tests are admissible in disciplinary proceedings, *see Lenea v. Lane,* 882 F.2d 1171, 1174 (7th Cir.1989), an inmate does not have a constitutional right to utilize or request that a witness in a disciplinary hearing be given a polygraph examination. *See Patterson v. Gilmore,* 974 F.2d 1340 (table), 1992 WL 206784, *2 (7th Cir.1992) (holding that inmate did not have constitutional right to polygraph examination); *Freitas v. Auger,* 837 F.2d 806, 812 n. 13 (8th Cir.1988) (finding that inmate was not entitled to polygraph examination in disciplinary hearing). Thus, this court must dismiss Hester's claim that his due process rights were violated when the CAB refused to administer polygraph examinations to certain witnesses.

### C. FAILURE TO PROVIDE COPIES OF WITNESS STATEMENTS

The petitioner also complains that the prison failed to provide him with a copy of witness statements before the CAB hearing. Specifically, Hester contends that his due process rights were violated when he was denied access to certain statements made by confidential witnesses during the investigation of Hester's charges. The respondent counters by arguing that there are numerous differences between a criminal trial and a CAB hearing and, thus, the petitioner was not entitled to receive certain witness statements prior to the hearing due to concerns for institutional security and inmate safety.

In a prison disciplinary hearing, an inmate is entitled to exculpatory evidence to ensure "that the trier of fact considers all relevant evidence in reaching a conclusion as to guilt or innocence ... and ... the right of the defendant to prepare the best defense he can bring to the [CAB's] attention and any

evidence helpful to the case." *See Chavis v. Rowe*, 643 F.2d 1281, 1286 (7th Cir.), *cert. denied*, 454 U.S. 907, 102 S.Ct. 415, 70 L.Ed.2d 225 (1981). However, in *Wolff, supra*, the Supreme Court also found that there are countervailing concerns to this rule. In *Young v. Kann*, 926 F.2d 1396 (3d Cir.1991), the United States Court of Appeals for the Third Circuit held that a prisoner's right to produce evidence in his or her defense is limited only by the demands of prisoner safety and institutional order, as determined by the sound discretion of the prison authorities.[2] 926 F.2d at 1400 (finding "the risk of death or injury to inmate witnesses and informants identified at hearing or in produced documents, as well as the potential for breakdown in authority, order and discipline inside the institution" are grounds for limiting inmate's right to produce evidence).

In this case, it appears that Hester sought the production of several witness statements referred to in the investigation report as being given by "confidential witnesses." Based upon the Third Circuit's decision in *Young*, these statements appear to be within the limited type of evidence that falls outside of the inmate's right of production. The confidential inmate witnesses appear to have provided the investigator with damaging information on Hester's behavior. The identities of these witnesses remained confidential since the prison allegedly feared for their safety since Hester was already charged with injuring another inmate whom Hester believed to be a "snitch." Thus, after reviewing the record in this case, it is this court's view that, under the totality of the circumstances, the prison's decision to withhold the identity of certain witnesses was proper. Therefore, the court finds that the prison's decision not to produce the identities or the actual statements of the confidential witnesses did not violate Hester's rights under *Wolff* and *Young*. Accordingly, this claim must also be dismissed.

## D. EQUAL PROTECTION CLAIM

■ Hester also raises what appears to be a claim under the Equal Protection Clause

of the Fourteenth Amendment to the United States Constitution. Hester contends that he was denied equal protection because he was sanctioned more severely than another inmate, Robert Roberts, who allegedly committed a similar offense. The respondent argues that inmate Roberts was not charged with the same offense; rather, Roberts was sanctioned for an attempted assault while Hester was found guilty of battery. Thus, the respondent submits that it is not surprising that the discipline imposed for the two inmates would vary.

■ The Supreme Court of the United States has held that, in order to prevail on an equal protection claim, a plaintiff must show that a state official acted with a discriminatory purpose. *McCleskey v. Kemp*, 481 U.S. 279, 292, 107 S.Ct. 1756, 1766–67, 95 L.Ed.2d 262 (1987). The Seventh Circuit has followed *McCleskey* by extending the Supreme Court's holding to prison disciplinary cases. *See Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir.1982) (finding that an inmate "must demonstrate intentional or purposeful discrimination" to show equal protection violation). Thus, Hester must establish that the prison acted with an intentional or purposeful discriminatory motive when sanctioning him in order to prevail on his claim.

In this case, the respondent argues that inmate Roberts, the individual whom Hester submits received a lesser sanction for a similar charge, was not charged with a similar crime. Rather, Roberts was charged and sanctioned for an attempted assault while Hester was charged and sanctioned for committing a battery. Thus, it is this court's opinion that Hester has not established that the CAB acted with a discriminatory or purposeful motive in sanctioning him since his crime was clearly more severe than that of inmate Roberts. As a result, the petitioner's equal protection claim must fail.

## E. NON–COMPLIANCE WITH INSTITUTIONAL PROCEDURES

■ The petitioner also argues that the CAB violated internal institutional proce-

**2.** While this court is not required to follow the appellate decisions of other circuits blindly, these decisions must be given due respect because the

Seventh Circuit has yet to rule on this issue. *See, Colby v. J.C. Penney Co., Inc.*, 811 F.2d 1119, 1123 (7th Cir.1987).

dures under the ADPP. Specifically, Hester contends that the CAB did not hold his hearing within the time constraints mandated by the ADPP. It must be understood that this court does not sit to correct any errors of state law. *See Estelle v. McGuire,* 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991), and *Kraushaar v. Flanigan,* 45 F.3d 1040 (7th Cir.1995). Further, this court does not sit as a trier de novo in state court criminal proceedings and does not sit as a court of general common law review. The collateral review that is envisioned by § 2254 focuses on violations of the Constitution, laws and treaties of the United States. *See Bell v. Duckworth,* 861 F.2d 169 (7th Cir.1988), *cert. denied,* 489 U.S. 1088, 109 S.Ct. 1552, 103 L.Ed.2d 855 (1989).

In this case, Hester does not argue that the ADPP created, modified or altered the federal procedural rights due inmates under *Wolff* and *Rasheed–Bey.* Thus, it appears that the petitioner's claim falls squarely under the laws of the State of Indiana. Accordingly, pursuant to *Estelle,* this court finds that Hester's claim fails to allege a violation of federal law and, therefore, must be dismissed.

### F. INEFFECTIVE ASSISTANCE OF LAY ADVOCATE

The petitioner also claims that his lay advocate's performance in the CAB hearing was ineffective under the Sixth and Fourteenth Amendments to the United States Constitution. Hester complains that his lay advocate erred by failing to point out that there were discrepancies between inmate Torres' witness statements. The respondent argues that there is no constitutional right to the effective assistance of a lay advocate and, therefore, the petitioner's claim must fail.

The United States Court of Appeals for the Seventh Circuit has held that there is no due process right to a lay advocate in a prison disciplinary hearing. *Miller v. Duckworth,* 963 F.2d 1002, 1004 (7th Cir.1992). Thus, because there is no right to a lay advocate, the lay advocate's performance cannot create any rights for Hester under the Sixth Amendment to the United States

Constitution. Accordingly, Hester's ineffective assistance claim must be dismissed.

### V. CONCLUSION

The court, for the foregoing reasons, holds that Hester's petition pursuant to 28 U.S.C. § 2254 states no claim upon which relief can be granted under the Fourteenth Amendment to the United States Constitution. Therefore, this petition is hereby **DENIED** and this case is now **DISMISSED. IT IS SO ORDERED.**