**Kenneth REED, Petitioner,**

v.

**Rondle ANDERSON, Respondent.**

**No. 3:01CV0067 AS.**

United States District Court,
N.D. Indiana,
South Bend Division.

April 18, 2001.

Kenneth Reed, Michigan City, IN, Pro se.

Theresa A. Stevens, Indiana Attorney General, Indianapolis, IN, for Respondent.

### *MEMORANDUM AND ORDER*

SHARP, District Judge.

## I. Background

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(b)(1), requires that an inmate who seeks federal relief from a state court conviction must exhaust his state judicial remedies (exhaust his appeals) prior to turning to the federal court for collateral relief. "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—(A) the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). Kenneth Reed did exhaust his claim, and the relief he obtained through exhaustion gave rise to this petition. Reed alleges that certain due process rights apply during a prison's administrative appellate procedure. In his petition for habeas corpus, Reed attempts to impute on the state an obligation to provide the same due process protections when he seeks administrative appellate relief as what is provided, by federal mandate, at a prison board's initial determination of guilt.

Reed is incarcerated, and was incarcerated during the time period in question, at the Indiana State Prison ("ISP") in Michigan City pursuant to a state court conviction. In late 1999, ISP staff became suspicious of funds which were transferred out of the ISP's Inmate Trust Fund to residences located primarily in the South

Bend, Indiana, area. Inmates may transfer their money that is kept in trust in the Fund to persons outside the prison through the use of remittance slips, but inmates may not transfer money to other inmates. In January, 2000, ISP staff commenced an investigation of drug trafficking within the ISP. Inmates sent remittance to addresses in South Bend. During the course of the investigation, ISP learned that the South Bend addresses were the residences of family and friends of Kenneth Reed and his brother, Frederick Reed, both of whom were incarcerated at ISP. Through the use of inmate urine tests, interviews, tracing remittance slips, and other investigation, it was determined that various ISP inmates sent their funds to the Reeds' relatives and friends as payment for drug transactions that occurred within the ISP itself. It was believed that the Reed brothers were the dealers from whom other inmates purchased marijuana. Investigators determined that between August and October, 1999, approximately $950 was sent from the Inmate Trust Fund to the two South Bend addresses through remittances which were ordered by various inmates. Additionally, internal affairs investigator Charles Whelan intercepted remittance slips wherein various inmates requested almost $1,100 be sent to the South Bend residences. The Investigative Report filed in this matter, which is part of this Court's record, indicates Investigator Whelan received confirmation from three separate sources that the funds were used to pay drug debts owed to Kenneth and Frederick Reed. The investigation was closed on June 28, 2000.

On that same date, a Conduct Report was completed by an ISP staff member, charging Kenneth Reed with violating IC 35–48–4–10—Dealing in marijuana.[1] The Conduct Report, which was provided to Petitioner on June 28, notified him of the investigation that led to the charge and of the pending disciplinary hearing on the charge. Petitioner received a report of the investigation as well. During the pre-screening, Petitioner waived the assistance of a lay advocate and waived 24–hour notice of the hearing. The hearing was held before a Conduct Review Board ("CAB") on July 13, 2000, at which Petitioner presented a statement in his defense that he had nothing to do with the case, and that his brother's actions "shouldn't reflect on him." The CAB reviewed the Conduct Report, staff reports, the report of the investigation, and Petitioner's evidence, found Petitioner guilty of violating ISP offense "Class A–100—Dealing in Marijuana" and sanctioned him with one year in disciplinary segregation and a demotion in Earned Credit Time from Class I to Class II.

Petitioner's first appeal of the conviction was denied. Petitioner initial appeal to C.A. Penfold, the Final Reviewing Authority of Indiana Department of Corrections Adult Operations, was denied on September 20, 2000. However, when Petitioner learned that his brother, Frederick Reed, who had been charged and sanctioned very similarly to Petitioner, had received a downward adjustment in the charge and sanction from the Final Reviewing Authority, Petitioner requested that Penfold conduct another review of his appeal. Peti-

---

1. Frederick Reed, Kenneth's brother, was similarly charged, convicted, and sanctioned. His appeal resulted in an adjustment of time to be spent in disciplinary segregation. This Court's record contains a copy of Frederick Reed's documents as well as Kenneth's. However, the petition before the Court in this case is limited to the claims presented by Kenneth Reed. This Opinion contains no comment or ruling regarding Frederick Reed's disciplinary sanctions and appeal. For clarity, this Opinion refers to Kenneth Reed as "Petitioner".

tioner requested, and received, the same downward adjustment that had been afforded to his brother. Penfold again reviewed the appeal, and granted the same downward adjustment of the violation and the sanction as what had been granted to Frederick Reed. After adjustment, Petitioner was guilty of a lesser violation— "Giving and Receiving Without Authorization"—and his sanction consisted of six months in disciplinary segregation and an Earned Credit Time deprivation of 180 days. The Final Reviewing Authority thought this adjustment was warranted because, in his determination, the evidence presented at the CAB hearing supported a charge of violating ISP Code B–234 (a lesser violation).

Apparently unsatisfied with the relief he obtained by the downward adjustment, Petitioner filed a petition for habeas corpus. In his petition, Reed concedes that his hearing contained all the due process rights to which prison inmates are entitled. Petitioner does, however, challenge the sufficiency of the evidence by which the CAB determined his guilt. Petitioner also claims that his due process rights were violated when the Final Reviewing Authority adjusted his violation and sanction without first providing him an evidentiary hearing. In sum, the issue to be decided for this appeal is, whether the federally-mandated due process rights that attach when an inmate faces sanction by a disciplinary review board should be granted to an inmate who seeks and receives partial relief from the sanction through an administrative appellate system.

## II. Analysis

■ To begin, the Court admonishes that when it evaluates a petition for habeas relief, its function is to ensure that constitutionally adequate measures were provided to the inmate, but it does not review questions of state law. *See Bonner v. Parke*, 918 F.Supp. 1264, 1267 (N.D.Ind. 1996). Second, the Seventh circuit permits inmates to use the amended habeas statute to challenge determinations made by prison disciplinary bodies. *Sweeney v. Parke*, 113 F.3d 716, 718 (7th Cir.1997); *Evans v. McBride*, 94 F.3d 1062, 1065 (7th Cir. 1996), cert. denied, 519 U.S. 1131, 117 S.Ct. 991, 136 L.Ed.2d 872(1997).

■ Before reaching this case's ultimate issue, a brief analysis of Reed's liberty interest and due process interests is proper. Because Reed's sanction, in its final form as issued by C.A. Penfold, the prison's Final Reviewing Authority, involved a six-month placement in disciplinary segregation and a 180 day deprivation in earned credit time, Reed's liberty interests have been affected by the State, and the habeas court must ensure that in so doing, federal constitutional provisions were not harmed.[2] *See Bonner*, 918 F.Supp. 1264, 1268 (inmate does not have a liberty interest in remaining in the general prison population when sanctioned with disciplinary segregation, and a one-year placement in disciplinary segregation within the ISP does not create an atypical and significant hardship); *Sweeney*, 113 F.3d 716, 718 (inmate's loss of 180 days' good-

---

**2.** "In determining what is the process due an inmate in the prison context, the Supreme Court of the United States has held that 'one cannot automatically apply procedural rules designed for free citizens in an open society ... to the very different situation presented by a disciplinary proceeding in a state prison.'" *Wolff v. McDonnell*, 418 U.S. 539, 560, 94 S.Ct. 2963, 2977, 41 L.Ed.2d 935 (1974).

"Prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional safety." *Hester v. McBride*, 966 F.Supp. 765, 771 (N.D.Ind.1997), citing *Bell v. Wolfish*, 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979).

time credit constitutes a deprivation of a liberty interest in good-time credits, and an inmate is entitled to due process protection if the State's action will inevitably affect the duration of the sentence) (citations omitted); *Meeks v. McBride*, 81 F.3d 717, 719 (7th Cir.1996) (Indiana prison inmates have a protected liberty interest in earned good time credits). Therefore, Reed was entitled to receive certain well-established federal procedural rights. "The Supreme Court has held that an inmate must receive advance written notice of the disciplinary charges; an opportunity to call witnesses and present documentary evidence in his defense; and a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *McPherson v. McBride*, 188 F.3d 784, 785 (7th Cir.1999), *Superintendent, Mass. Correctional Institution v. Hill*, 472 U.S. 445, 454, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985). Additionally, state inmates have the right to be heard before an impartial decision maker as part of the due process guarantee. *Gaither v. Anderson*, 236 F.3d 817, 819 (7th Cir.2000). "To guard against arbitrary decision making, the impartiality requirement mandates disqualification of a decision maker who is directly or substantially involved in the incident underlying a prison disciplinary hearing, but it does not require disqualification of a decision maker who is only 'tangentially involved.'" *Gaither* at 819. The Court must be satisfied that the evidence relied upon by the CAB presented "sufficient indicia of reliability" so that the Court can conclude that the decision to revoke good-time credits was not arbitrary. *Meeks*, 81 F.3d at 719.

■ Finally, due process requires that the determination of guilt must be supported by "some evidence", which has been described as "less exacting than the preponderance of the evidence standard and requires only that the CAB's decision not be arbitrary or without support in the record.'" *Gaither* at 819. "In reviewing a decision for 'some evidence', courts 'are not to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis.'" *McPherson*, 188 F.3d at 785–86, *citing Hill*, 472 U.S. at 455–56, 105 S.Ct. at 2768. Ultimately, the relevant inquiry is "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Webb v. Anderson*, 224 F.3d 649, 651 (7th Cir.2000), *citing Hill*, 472 U.S. at 455–56, 105 S.Ct. at 2774.

■ ISP's CAB provided all the process that was due Reed. This conclusion is not disputed in the petition. The record contains an accurate account that shows Reed received notice, an opportunity to be heard before a presumptively impartial board, an opportunity to call witnesses (which he waived) and to present evidence in his defense. The record also supports the sanction imposed; the investigative report and ISP staff reports that were before the CAB meet the "some evidence" threshold.

■ The Court's standard of review of this case is found in the AEDPA itself. "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State

court proceeding." 28 U.S.C.A. § 2254(d). This standard has been discussed in subsequent Seventh circuit cases. "A state court decision is 'contrary to' Supreme Court precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *Anderson v. Cowan,* 227 F.3d 893, 895 (7th Cir.2000), *citing Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 1519, 146 L.Ed.2d 389 (2000). The AEDPA provision means that inmates cannot base their challenges on Seventh circuit opinions which apply Supreme Court precedent, "but (they) must look exclusively to Supreme Court caselaw." *Sweeney,* 113 F.3d at 718; see also 28 U.S.C.A. § 2254(d)(1). Ultimately, Reed must show that the Final Reviewing Authority's grant of partial relief either was a decision that was contrary to, or that unreasonably applied, clearly established Supreme Court precedent, or was an unreasonable determination based on the facts and evidence presented at the hearing. The Court has already found that the sanction imposed was reasonable on the basis of the "some evidence" standard. Therefore, Reed's petition can be granted only if Reed can base this alleged right in a United States Supreme Court case.

Petitioner has not done made that showing here. He has not provided this Court with any decision by the U.S. Supreme Court which clearly establishes an inmate's right to have the same due process provisions at the final stage of his administrative appeal as at the initial determination of guilt. In this case, the action taken by the Final Reviewing Authority is interpreted as being in Petitioner's benefit. First, the Final Reviewing Authority consented to reviewing Petitioner's appeal a second time (affording a total of three appellate reviews of the case) upon Petitioner's request. Second, the Final Reviewing Authority adjusted Petitioner's sanction after it saw that it had provided the same relief to another inmate's appeal in which the same facts and investigation were at issue. Third, Petitioner's second request for appellate relief to the Final Reviewing Authority made no claims regarding the sufficiency of the evidence on which the sanctions were based, nor did Petitioner request an evidentiary hearing, nor did Petitioner claim he was innocent. The only relief that Petitioner requested in this final appeal was that his sanction be equalized with his brother's, whose sanction was determined on the basis of the same investigation. The only changes made by the Final Reviewing Authority were a downward adjustment. Reed's interests were only benefited by the downward adjustment. This case presents a case in which Petitioner received exactly what he requested. Moreover, since Reed has raised no reviewable issues in his petition, the Court's review of this matter is over. The Court's review has fulfilled the AEDPA's dictates. This effort at fairness and completeness is highly commendable.

## III. Conclusion

The Petition for habeas corpus is **DENIED. IT IS SO ORDERED.**